No. 88-502

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

IN RE THE MARRIAGE OF
KATHLEEN LOIS PENNING,

        Petitioner and Respondent,

  and

DALE EVERETT PENNING,

        Respondent and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Russell Fillner, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Andrew M. Small, Billings, Montana

    For Respondent:

        Jack E. Sands; Sands Law Firm, Billings, Montana

Submitted on Briefs: June 1, 1989

Decided: June 30, 1989

Filed:

Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

This appeal from the Thirteenth Judicial District, Yellowstone County, concerns issues arising from the divorce of Kathleen and Dale Penning. Dale appeals the District Court's decisions on custody, the proper amount of child support and maintenance, and the propriety of an award of attorney fees to Kathleen. We affirm.

The parties married on March 27, 1981. The District Court dissolved the marriage on April 21, 1988. Four children, aged from one year old to six years old, were born of the marriage. Kathleen also has an eight-year-old child from a prior marriage.

Dale contracts work at the Exxon refinery in Billings, and receives approximately $47,000 annually. Dale employs a person he describes as a close friend for unskilled or semi-skilled labor at $12.50 an hour. The parties dispute the net income retained by Dale from the $47,000 in earnings.

Kathleen has performed only unskilled labor in the past, and currently has no special skills which would enable her to take a job that would adequately cover her child care expenses. The primary caretaker of the parties children has been Kathleen. The lower court awarded Kathleen $260.00 per month, per child in child support, and $400.00 per month in maintenance. The lower court also named Kathleen the residential custodian of the parties' children.

Dale presents the following issues:

(1) Whether the District Court erred in naming Kathleen residential custodian?

(2) Whether the District Court erred in awarding Kathleen $260.00 per month per child for child support?

(3)    Whether the District Court erred in awarding maintenance to Kathleen?

(4)    Whether the District Court erred in awarding attorney fees to Kathleen?

## I.

Dale makes several contentions on the issue of the proper residential parent for implementing the joint custody provisions of the decree.  First, Dale contends that the District Court failed to consider the presence of physical abuse of the children inflicted by Kathleen as by required by § 40-4-212(6), MCA.  Testimony indicated that Kathleen has, on occasion, slapped or spanked the children.  Testimony also indicated that some of the children have suffered from diaper rash, and that one child, while left unattended by Kathleen, fell from the parties' van to the pavement.  The only other incident of alleged abuse involves punishment meted out by Kathleen for two of the children's behavior in playing with dog feces.  Kathleen testified that the parties' dog messed on the floor of their basement.  Her two young boys discovered the mess and, according to Kathleen, managed to become covered with it.  Kathleen testified that she smeared some of the matter on their noses and made them stand in the corner for five minutes.

We hold that the District Court acted within its discretion by refusing to find that these incidents constituted child abuse.  Thus, no error may be predicated here based on the required findings under § 40-4-212(6), MCA.

Dale further contends that the lower court committed reversible error in finding:

> [Kathleen's] home and interaction with the children
> has been observed by a number of witnesses.  All of
> whom testified that she is a good mother.

3

Dale points out that not <u>all</u> of the witnesses testified that Kathleen was a good mother. We disagree that the District Court erred in interpreting the testimony of the witnesses.

Witnesses testifying for Dale criticized Kathleen's parenting skills. However, they also admitted that Kathleen had good abilities in some areas of parenting. Moreover, even if all of Dale's witnesses testified that Kathleen was not a good mother, other witnesses held the opposite opinion. Thus, the record would only reflect conflicting evidence on this issue, and it is the function of the District Court to resolve such conflicts. We will not reverse the decision of the District Court on what constitutes a custody arrangement in the best interest of the children based on the proper weight assigned to conflicting evidence. In re Marriage of Rolfe (1985), 216 Mont. 39, 45, 699 P.2d 79, 82. Nor will we reverse for incomplete or partially erroneous findings unless appellant demonstrates the District Court failed to base its decision on substantial evidence. In re Marriage of Saylor (Mont. 1988), 756 P.2d 1149, 1151, 45 St.Rep. 1062, 1065.

Dale also contends that the lower court erred in relying on a report from a Court Services Investigator in its findings because the report was never admitted into evidence. Kathleen responds that Dale stipulated to a Court Services investigation which was to "make appropriate recommendations to the Court." We agree that Dale's stipulation to the report properly places it in the record as evidence.

Dale asserts that his citations to the record show that substantial evidence does not support the District Court's decision to make Kathleen the residential parent. We disagree.

By and large, witness testimony supports the conclusion that the best interests of the children will be served by making Kathleen the residential custodian. Several witnesses

4

testified favorably concerning Kathleen's parenting skills. One stated:

Q. Have you had occasion to be in her home?

A. Yes. On several occasions I have visited her home.

Q. And have you observed her and her children in her home?

A. Yes, quite often.

Q. Could you describe the home environment there?

A. Well, yes. It always strikes me that it is a very difficult situation that she is in. She had the five children, and it always struck me how remarkably she controlled that.

Another witnesses testified:

Q. Could you describe the relationship between Kathy and her children?

A. They seem to be very close. I don't know. She was just a real good mother.

Some witnesses having knowledge of Dale's parenting skills indicated that Dale did not provide adequate care for the children. Therefore, the decision of the District Court on the residential parent is supported by substantial evidence and we affirm on this issue.

## II.

Dale asserts that the District Court erred in determining the amount of child support. The lower court calculated Dale's support obligation as $260.00 per child each month.

In determining Dale's gross income, the District Court refused to deduct the $12.50 per hour, 20 hours per week, employment expenses Dale incurs for employing his close friend. The lower court allowed such expenses at $5.00 per hour. This is the main objection to the lower court's calculations in arriving at Dale's net income for determining child support. We hold that the lower wage figure properly reflects evidence in the record that the unskilled or semi-skilled labor performed by Dale's close friend is worth only $5.00 per hour. Thus, the lower court acted correctly in discounting Dale's assertions to the contrary.

Dale also objects to the addition of workers' compensation benefits as income for determining his ability to make support payments. He claims that he no longer receives the benefits. Kathleen asserts that the issue is not properly reviewable on this appeal. We agree that the existence of a reduction in Dale's income following the proceedings in the lower court cannot be considered as an issue reviewable on this appeal.

Dale also objects generally to the lower court's award of support in light of the Guide for Determination of Child Support Obligations, adopted and approved for use by district courts by this Court on January 13, 1987. Dale claims that the District Court misapplied the Guidelines by failing to subtract the proper amount of his business expenses from his gross income to arrive at his net income. Kathleen responds that under the proper application of the Guidelines, Dale's support obligations would exceed the amount arrived at by the lower court.

The Guidelines mandate that only "legitimate" business expenses be subtracted to arrive at net income. Guide for Determination of Child Support Obligations, Part 5. As previously discussed, there exists some controversy over the

proper amount of legitimate expenses incurred by Dale. Moreover, the Guidelines:

> are not binding upon such judges and officials [using the guidelines]. We so order to prevent appeals based upon claimed failure to observe or follow the guidelines.

In the Matter of Adoption of a Uniform District Court Rule on Child Support Guidelines, Order of the Supreme Court of Montana, No. 86-223, Filed January 13, 1987. Obviously, there exists no reversible error based on the improper use of the Guidelines here. Thus, we affirm on this issue.

## III.

Dale contends under this issue that the lower court erred in setting the amount of maintenance to be received by Kathleen at $400.00 per month. According to Dale, the lower court erroneously failed to consider Dale's ability to "meet his needs while meeting those of the spouse seeking maintenance," as required by § 40-4-203(2)(f), MCA.

The thrust of Dale's argument on this point is that the lower court erred in increasing the amount of available income for maintenance by finding that Dale was sharing expenses with the close friend he employs for $12.50 an hour. Dale contends that evidence in the record demonstrated that he and the friend do not share expenses. We disagree. At the trial, one of Dale's witnesses testified that he had stayed with Dale the weekend prior to the trial, and that Dale's close friend was present in the household during the weekend. Another witness testified that while on visitation with Dale, the children have gone from Dale's close friend's house to his house to play. This testimony is sufficient to

7

sustain the District Court's conclusion that Dale and his close friend/employee share expenses.

Dale also objects to the lower court's decision on the ability of Kathleen to provide for the children's financial needs. The record does not contain evidence sufficient to support this assertion. On the contrary, evidence indicates Kathleen is patently unable to hold down a job which would bring in income sufficient to reduce Dale's obligation. Thus, we reject Dale's contentions on this issue.

## IV.

Dale argues that the District Court abused its discretion by awarding attorney fees to Kathleen. Again, the focus of the argument concerns Dale's finances, this time in regard to his ability to pay the fees. We have already held that the District Court acted within its discretion in determining Dale's income. Thus, we affirm.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

8