No. 96-091

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

IN RE MARRIAGE OF

JAMES ALAN ABRAHAMSON,

    Petitioner and Respondent,

  and

MICHELLE SHERRIE ABRAHAMSON,

    Respondent and Appellant.

FILED

OCT 08 1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Thomas C. Honzel, Judge presiding.


COUNSEL OF RECORD:

    For Appellant:

        James P. Reynolds, Reynolds, Motl and
        Sherwood, Helena, Montana

    For Respondent:

        John L. Hollow, Attorney at Law,
        Helena, Montana


Submitted on Briefs:  June 27, 1996

Decided:  October 8, 1996

Filed:

_____
        Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

The respondent, James Abrahamson, filed a motion in the District Court of the First Judicial District in Lewis and Clark County, pursuant to § 40-4-219(1)(f), MCA, to modify primary residential custody of the parties' child, Jordin. The District Court granted James' motion. The appellant, Michelle Abrahamson, appeals the District Court's judgment. We affirm the order and judgment of the District Court.

The issue on appeal is whether the District Court erred when it granted James Abrahamson's motion to modify custody of the parties' child.

FACTUAL BACKGROUND

In December 1992, the parties' marriage was dissolved by decree of the District Court. Incorporated into that decree is a Custody, Support, and Property Settlement Agreement. The agreement granted the parties joint legal custody of Jordin, the sole child of the marriage, designated Michelle as the primary residential custodian, and provided James with visitation rights.

After the dissolution, both parties remained in Helena. However, in January 1995, Michelle told James that she might be moving to Salt Lake City, Utah. James filed a motion with the District Court, in which he moved for a modification of custody and a restraining order to prevent Michelle from leaving Helena before the matter could be heard by the District Court. Subsequently,

2

Michelle filed her objections to James' motions, and her own motion to amend custody and visitation.

In March 1995, Michelle provided James with formal notice of her intent to change Jordin's residence from Montana to Utah. In an affidavit dated February 3, 1995, she stated that the purpose of her move was to attend the University of Utah and pursue a career in the Federal Bureau of Investigation. In a second affidavit, dated April 28, 1995, she stated that her purpose was to enroll in a criminal justice course at Salt Lake City Community College. She also stated that, in order to qualify for the in-state tuition rate and certain higher education grants, she was required to become a resident of Utah no later than June 1, 1995. However, after Michelle moved to Utah, she instead enrolled in the University of Phoenix Business School in Salt Lake City. At the time of the hearing, she was not attending school, and it is disputed as to whether she ever did, in fact, attend classes.

The parties jointly submitted an order to the District Court which allowed Michelle to move to Utah, and provided that Donna Hale, a licensed clinical social worker, would conduct a custody evaluation and prepare a custody report.

The District Court heard the motion to modify custody on September 21, 1995.

At the hearing, James sought to establish that Michelle leads an unstable life and therefore, that Jordin's best interest would be served by a modification of the custody arrangement. James

3

testified about a number of subjects: his work schedule and how it would allow him to spend time with Jordin; his relationship with Jordin; his strengths as a parent; his ability and desire to serve as the primary residential custodian; his relationship with Michelle since the dissolution; and the family support network Jordin has in Helena. He expressed concern about Michelle's ability to effectively parent Jordin, as well as her commitment to her role as a parent. He also responded to several allegations made by Michelle, including his possession of pornographic materials, his relationships with several women, and the fact that he had taken Jordin into the mens' locker room at the athletic club to shower.

Denise Blankenship and Kristi Rivenes, both of whom were friends of Michelle while she lived in Helena, testified that Michelle had been, on occasion, inadequate as a parent. Blankenship described Michelle as being inattentive to Jordin's needs, and impatient with Jordin on several occasions. Rivenes testified that Michelle was an irresponsible parent because she "never thought of Jordin first."

Michelle presented evidence to support her contention that a custody modification would not be in Jordin's best interest. Paula Fenton, Jennifer Lamach, Roweena Meehan, Debbie Stanton, and Treanna Olson all testified that Michelle is a good parent, and that she has a strong relationship with Jordin. Karl Lieb, Michelle's boyfriend, also testified on her behalf. He stated that

4

he has developed a strong relationship with Jordin, and that Jordin was doing well in Utah. Michelle's testimony described her relationship with Jordin; her abilities as a parent; her reasons for moving to Utah; her work schedule; her availability as a parent; and her relationship with James since the divorce. Michelle asserted that both she and Jordin were doing extremely well since moving to Utah, and that a modification of custody would not be in Jordin's best interest.

Throughout the hearing, there was a significant amount of testimony relating to Michelle's purchase of a tanning salon in Salt Lake City. Michelle had engaged in negotiations for the purchase of one salon, but ultimately purchased another. Denise Robbins testified that Michelle had sought to purchase her salon, but that Michelle breached the contract. Furthermore, Robbins testified that Michelle planned to keep her day job and work at the salon during nights and weekends. Michelle disputed those claims, and asserted that the evidence regarding the purchase of the tanning salon was irrelevant to Jordin's best interest. James asserted, however, that the evidence was relevant, and established that Michelle lacked stability. According to James, the evidence also contradicted Michelle's stated purpose for moving to Utah. And finally, it established that her work schedule would not allow her to be an effective and available parent.

Donna Hale, a licensed clinical social worker, testified regarding her custody evaluation. Her report concluded that both

Michelle and James genuinely love Jordin, and that there was no evidence of endangerment with either parent. Ultimately, her report recommended that, while both parents should continue to share joint legal custody, Michelle should be the primary residential custodian.

The District Court granted James' motion to modify custody, designated James as the primary residential custodian, ordered that the parties should retain joint legal custody, and established a visitation schedule.

Subsequent to Michelle's appeal from that judgment, James filed with this Court a motion to strike materials and references not before the District Court, and a request for sanctions. In support of that motion, James alleges that "Michelle's actions in placing before this Court materials that were not part of the record of what occurred before the district court violate Rule 9, M.R.App.P." It is well established that this Court will not consider any evidence not contained in the record on appeal. *Johnson v. Killingsworth* (1995), 271 Mont. 1, 3, 894 P.2d 272, 273. Therefore, James' motion is granted, and the portion of Michelle's reply brief that refers to James' operation of Jordin River Products is stricken. James' request for sanctions is denied.

## DISCUSSION

Did the District Court err when it granted James' motion to modify custody?

6

When we review a District Court's findings related to a modification of custody, the standard of review is whether those findings are clearly erroneous. *In re Marriage of Elser* (1995), 271 Mont. 265, 270, 895 P.2d 619, 622. When findings upon which a decision is predicated are not clearly erroneous, we will reverse a District Court's decision to modify custody only where an abuse of discretion is clearly demonstrated. *Elser*, 271 Mont. at 270, 895 P.2d at 622.

On appeal, Michelle asserts that the District Court erred when it: (1) failed to adopt the recommendations made by Donna Hale in her custody report; (2) misapprehended the effect of certain proffered evidence; and (3) failed to apply the law as set forth in § 40-4-212(3)(a), MCA.

Donna Hale's custody report made the following recommendations: the parties should share joint legal custody; Michelle, as the primary residential custodian, should have custody of Jordin during the school year; and James should have visitation rights and custody of Jordin during the summer. The District Court, however, did not adopt the custody report's recommendations. Instead, it modified custody and designated James as the primary residential custodian. Michelle asserts that the District Court abused its discretion when it failed to adopt the custody report's recommendations.

Section 40-4-215, MCA, authorizes a district court to order an investigation and report concerning custodial arrangements for a

child. In *Marriage of Moseman*, we interpreted that statute and held that a district court is not bound by a court-ordered custody investigation. *In re Marriage of Moseman* (1992), 253 Mont. 28, 31, 830 P.2d 1304, 1306. After a review of our prior cases, we determined that they "require that a specific finding of fact is required regarding a custody investigation ordered by the court." *Marriage of Moseman*, 253 Mont. at 31, 830 P.2d at 1306. An abuse of discretion will be found if "we are not able to determine if the District Court even considered the report." *Marriage of Moseman*, 253 Mont. at 31, 830 P.2d at 1306.

In this case, the District Court's findings of fact and conclusions of law refer to the custody report four times and recite its recommendations verbatim. Furthermore, when it rejected the custody report's recommendations and granted the motion to modify custody, the District Court specifically found that Michelle was not "forthright with Donna Hale or the Court." The District Court was not required to adopt the custody report. It was only required to consider the report when making its custody determination, and to make the required specific finding of fact. We conclude that the District Court fulfilled its obligations, and hold that it did not abuse its discretion when it failed to adopt Hale's custody report.

Michelle next asserts that the District Court abused its discretion when it misapprehended the effect of certain proffered evidence.

8

At the outset of our analysis, we note that "[t]he trial court is in a better position than this Court to resolve child custody issues. The district court's decision is presumed correct and will be upheld unless a clear abuse of discretion is shown." *In re Custody of J.M.D* (1993), 259 Mont. 468, 473, 857 P.2d 708, 712.

At the hearing, both of the parties and a number of witnesses, including Donna Hale, testified at great length. Virtually all of the testimony was contested. Michelle attempted to establish that she is a good parent. She also challenged James' ability to parent, and defended both her decision to move to Utah and her work schedule. James, on the other hand, produced evidence establishing that Michelle's life-style is unstable and impulsive. His witnesses testified that Michelle is inattentive to Jordin's needs, is unwilling to place Jordin's interests ahead of her own, and is often impatient with Jordin. The evidence related to Michelle's purchase of the tanning salon suggested that her work schedule would be unpredictable, and could include nights and weekends. Furthermore, her work hours at the tanning salon could be in addition to those required by her day job. The District Court made an independent determination that Michelle had not been forthright with Donna Hale regarding the tanning salon and her work schedule, nor with the District Court regarding her reasons for moving to Utah.

Thus, ultimately, the District Court was faced with conflicting accounts, and forced to resolve a myriad of factual

9

disputes. Based on all of the evidence and testimony presented at the hearing, the District Court determined that James' situation is more stable than Michelle's, and therefore, that James should have custody of Jordin during the school year. It is well established that issues of evidentiary weight and witness credibility are within the province of the trial court, and that "we will not substitute our judgment for that of the District Court." *In re Adoption of J.M.G.* (1987), 226 Mont. 525, 528, 736 P.2d 967, 969. We have recognized that when the record contains conflicting evidence, "[i]t is the function of the District Court to resolve such conflicts." *In re Marriage of Penning* (1989), 238 Mont. 75, 78, 776 P.2d 1214, 1216.

Based on our review of the record, we conclude that the District Court's findings are supported by substantial evidence and were not clearly erroneous. Furthermore, we conclude that when it made its determination that Jordin's best interest required a modification of custody, the District Court did not abuse its discretion.

Finally, Michelle alleges that the District Court failed to apply § 40-4-212(3)(a), MCA, which states:

> (3) The following are rebuttable presumptions and apply unless contrary to the best interest of the child:
> (a) Custody should be granted to the parent who has provided most of the primary care during the child's life.

10

She contends that the District Court committed a fundamental error in its conclusions of law when it failed to apply or mention § 40-4-212(3)(a), MCA.

Contrary to Michelle's assertions, we conclude that the District Court did, in essence, apply § 40-4-212(3)(a), MCA. Despite its failure to specifically mention the statute, the District Court found that the presumption had, in fact, been rebutted. Michelle's reliance on the District Court's finding that both parents are fit to have custody is misplaced. Section 40-4-212(3)(a), MCA, does not require the District Court to find that one parent is unfit to have custody. Rather, it establishes a presumption in favor of the preexisting custodial parent, but only a rebuttable presumption. And as we recognized previously in this opinion, there was substantial evidence upon which the District Court based its decision to modify custody. The District Court found that Jordin's best interest required a modification of custody and the designation of James as the primary residential custodian. It necessarily and logically follows that a failure to modify custody and the retention of Michelle as the primary residential custodian would not be in Jordin's best interest. We conclude that the District Court, based on all of the evidence, determined that the statutory presumption had been adequately rebutted, and that the District Court's failure to explicitly mention § 40-4-212(3)(a), MCA, constitutes, at most, harmless error. *See* Rule 61, M.R.Civ.P.

11

Our decision today does not render § 40-4-212(3)(a), MCA, meaningless. District courts should be cognizant of § 40-4-212(3)(a), MCA, and should take appropriate steps to ensure that it is, in all applicable cases, adequately considered. We hold only that, based on substantial evidence in this case, the statutory presumption was adequately rebutted, and the District Court's failure to specifically mention § 40-4-212(3)(a), MCA, does not constitute reversible error.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

October 8, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

James P. Reynolds, Esq.
Reynolds, Motl and Sherwood
401 No. Last Chance Gulch
Helena, MT 59601

John L. Hollow
Attorney at Law
318 E. Sixth Ave.
Helena, MT 59601

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy