No. 96-489

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


IN RE THE MARRIAGE OF

MICHELLE L. TADE, formerly
known as MICHELLE L. HLAD,

Petitioner and Appellant,

and

MICHAEL E. HLAD,

Respondent and Respondent.


APPEAL FROM:   District Court of the Seventeenth Judicial District, In and for the County
               of Valley, the Honorable John C. McKeon, Judge Presiding.


COUNSEL OF RECORD:

For Appellant:

Thomas W. Trigg, Missoula, Montana

Vicki Knudsen, Roundup, Montana

For Respondent:

Brian Lilletvedt, Bosch, Kuhr, Dugdale, Martin & Kaze, Havre, Montana



Submitted on Briefs: April 10, 1997

Decided:  May 15, 1997
              Filed:


_____
Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Michelle Tade appeals from the order of the Seventeenth Judicial District Court, Valley County, modifying primary residential custody of her son. We affirm.
We address the following issues:

1.    Did the District Court abuse its discretion when it designated Michael as primary residential parent?

2.    Did the District Court abuse its discretion when it awarded custody because Michelle moved to Billings to further her education?

BACKGROUND

Michael Hlad and Michelle Tade were married and had one child, Aaron, who was born in 1991.  In 1994, the Hlads' marriage was dissolved by decree of the District Court.  Incorporated into the decree was a custody agreement which provided that the parties would have joint custody of Aaron, with physical custody shared on an equal basis, alternating weekly.  At that time the parties both lived, as they had during their marriage, in Glasgow, Montana.  The parties also agreed to review custody in one year and to modify it if appropriate.

In 1995, Michelle was accepted to Montana State University-Billings.  However, she and Michael were unable to agree on a change in Aaron's custody arrangement.  Michelle petitioned for modification, requesting primary physical custody of Aaron based on her anticipated substantial change in circumstances.

At the modification hearing, Michelle testified on the importance of consistency of herself as Aaron's primary physical custodial parent.  Michael testified about Aaron's ties to home, school, community, and family located in Glasgow.  The court heard testimony that Michelle had been Aaron's primary care provider for three years.  When Aaron was three years old and the shared custody plan went into effect, Michael provided primary care on an equal basis for one year.  Family members testified that Michael and Michelle are from the Glasgow area and both have close relationships with Aaron.

Following the hearing, the District Court issued findings of fact and conclusions of law.  The court granted Michael primary residential custody of Aaron during the school year, with Michelle to have nine days of visitation per month.  During the summer, Michelle will have primary residential custody with Michael receiving one monthly weekend visitation.

Michelle appeals from the order modifying custody.

DISCUSSION

1.    Did the District Court abuse its discretion when it designated Michael as primary residential parent?

This Court recently explained the jurisdictional requirements for a district court to approve a request for modification of a joint custody decree:

[I]n custody modification cases[,] if a request for modification of a joint custody decree would have the effect of substantially changing the primary residence of the parties' children, the court, before engaging in modification, must first find that the requirements of [ 40-4-219, MCA] have been met.  If the court finds that (1) "a change has occurred in the circumstances of the child or the child's custodian,"  40-4-219(1), MCA, and (2) further finds that the custodial parent and the child or children have moved or are going to move from one location to a different location . . . and that this move will hinder the effectiveness of the existing custody arrangement, then (3)  -219's jurisdictional requirements shall be deemed to have been met, and the court may proceed to modify the custody arrangement according to the "best interest" criteria set out in  40-4-212, MCA.

In re Marriage of Syverson (Mont. 1997), 931 P.2d 691, 702, 54 St.Rep. 32, 39.

The District Court found that it had jurisdiction to modify custody based on a change in circumstances arising from Michelle's move to Billings, Montana, and that the change made the previous custody plan no longer practical.  Neither party disputes these findings.  Therefore, we must determine whether the District Court erred when it modified primary residential custody because, as Michelle claims, the court did not apply the primary care presumption contained at  40-4-212(3)(a), MCA.

Section 40-4-212(3)(a), MCA, states:

(3)  The following are rebuttable presumptions and apply unless contrary to the best interests of the child:

(a) Custody should be granted to the parent who has provided most of the primary care during the childþs life.

The District Court made the following relevant findings in support of its order modifying custody:

Aaron has an interaction and interrelationship with other significant persons in his life who reside and make their home in . . . or around the community of Glasgow.  Aaron's home has always been in Glasgow . . . a significant community in [his] life. [Michelle's attending college] is a significant adjustment in her life and represents added stress, and that in turn will be an adjustment for Aaron to also make.  Aaron has shown a great ability to make adjustments.  The time that Michelle has to spend with Aaron [in Billings] [should not] have school interference and work interference as a significant factor . . . .  Michelle has been a very stable person in Aaron's life. [T]he circumstances under which this decree is given represent the time and effort that [Michelle] must give to further her education and to finance it.  [O]nce she's completed [her] education, that will represent a change in circumstances that might be sufficient to consider modification.

We will reverse a court's decision to modify custody only where an abuse of discretion is clearly demonstrated.  Syverson, 931 P.2d at 703 (citation omitted). Michelle maintains that she was Aaron's primary caregiver during the first three years of his life and that the District Court abused its discretion when it modified custody because it misunderstood  40-4-212(3)(a), MCA, and failed to weigh it properly with other statutory criteria.  More specifically, Michelle argues that the court considered she and Michael shared primary care of Aaron equally since their divorce, rather than considering that she "provided most of Aaron's primary care 'during the childþs life.'"

Michelle cites In re Marriage of Abrahamson (1996), 278 Mont. 336, 924 P.2d 1334, in support of her argument that the District Court inadequately considered  40-4-212(3)(a), MCA.  In Abrahamson, we held that "District courts should be cognizant of  40-4-213(3)(a), MCA, and should take appropriate steps to ensure that it is, in all applicable cases, adequately considered."  Abrahamson, 924 P.2d at 1338.  Abrahamson is distinguishable from Michelleþs situation.  There, a custody agreement designated the mother as primary residential custodian.  In the Hlads' custody agreement incorporated as part of their original dissolution decree, however, there was no designation of a primary caregiver or custodian.

Contrary to Michelle's argument that the District Court misapplied  40-4-212(3)(a), MCA, we conclude that, based on the court's findings, the statutory presumption in favor of the primary caretaker was rebutted.  Section 40-4-212(3), MCA, applies "unless contrary to the best interests of the child."  See  40-4-212(3), MCA. The record demonstrates that the court considered the statutory factors contained at  40-4-212, MCA, when it determined what custody arrangement was in Aaron's best interest. The court considered both parents' wishes as to custody; Aaron's interaction and interrelationship with his parents and other persons who significantly affect his best interest; Aaron's adjustment to home, school, and the community of Glasgow; and the mental and physical health of all the individuals involved.

We conclude that the District Court did not abuse its discretion when it designated Michael as Aaron's primary residential parent.

2.    Did the District Court abuse its discretion when it awarded custody because Michelle moved to Billings to further her education?

Michelle argues that the District Court penalized her for her decision to attend college.  She claims that the court erred when it assumed that she could not both attend

college and raise a small child successfully, and that there is no evidence that she would be unable to fulfill roles as both a student and parent.

After a thorough review of the record, we conclude that the evidence does not support Michelleþs claim. The court stated that it gave "significant weight to the adjustment [Michelle] must make to further her education." It complimented Michelle for her efforts to attend college and explained that they were not negative consequences. The record does not indicate that the court intended to punish Michelle for her decision to attend college. The court did not state that she could not raise a small child successfully while attending college. Rather, the standard was what custody arrangement is in Aaronþs best interest.

As we held previously in this opinion, the court exercised its discretion and considered Aaronþs best interests by applying the statutory criteria for modifying custody contained at  40-4-212, MCA. We hold that the District Court did not abuse its discretion when it modified custody because Michelle moved to Billings to attend college.

Affirmed.

/S/  J. A.  TURNAGE


We concur:

/S/  WILLIAM E. HUNT, SR.
/S/  JIM REGNIER
/S/  W. WILLIAM LEAPHART
/S/  TERRY N. TRIEWEILER