No. 97-411

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 1

IN RE THE MATTER OF THE CUSTODY
OF D.M.G. and T.J.G.,

Minor Children,

MICHEAL A. GREENE,

Petitioner, Respondent
and Cross-Appellant,
and

TAMMY J. PRICE,

Respondent and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Kirk S. Bond, Helena, Montana

For Respondent:

Mark P. Yeshe, Helena, Montana

Submitted on Briefs: November 6, 1997

Decided:    January 5, 1998
Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1    In October 1996, Micheal A. Greene (Micheal) filed his petition for custody and
visitation of his children, D.M.G. and T.J.G., (hereafter sometimes collectively referred

to as the children) in the First Judicial District Court, Lewis and Clark County. Following an evidentiary hearing in March 1997, the court entered its decision on April 29, 1997. This is an appeal by the children's mother, Tammy J. Price (Tammy), and a cross-appeal by Micheal from the findings of fact, conclusions of law and order of the District Court. The court awarded the parties joint custody of their children and provided that, in the event Tammy returns to the Helena area, she is to have primary physical custody of the children. However, if the parties continue to live in separate states, primary physical custody shall be alternated between the parties on a two-year basis with Micheal having custody commencing in August 1997. The court also provided for reasonable visitation by the non-custodial parent. We reverse and remand for entry of a further custody order consistent with this opinion.

BACKGROUND

¶2    Though they never married each other, the parties are the parents of twin sons, born in November 1993. Micheal is employed full time in Helena with a local title company. When the children were born, Tammy quit her employment, stayed home, and became the boys' primary care-giver. When not at work, Micheal was actively involved with the children as a parent. After the parties separated in the summer of 1995, the children resided with Tammy and she received AFDC assistance. Micheal spent a good deal of time with the children, continued to be an actively involved parent, paid child support and provided health insurance. Tammy subsequently began working part time at a grocery store and also completed clerical training courses. Micheal often cared for the children when Tammy was at work or at class.

¶3    In July 1996, after informing Micheal the previous month that she was preparing to leave Helena, Tammy moved to Salem, Oregon. Micheal was not happy about the move, but did not try to stop Tammy from leaving. He testified that he believed the move was only temporary. The record indicates that Tammy's change of residence was prompted because of personal conflict between the parties and because of the availability of better job opportunities and the nearness of family in Salem. Tammy testified that since moving, she feels more in control of her life. She is permanently employed as a shipping clerk. She is self-supporting and earns a salary of about $1,830 per month. Her employment includes medical, dental, retirement and life-insurance benefits. She and the children live in their own home. Her mother and step-father live in Salem and Tammy's mother assists her with the children in the mornings before they go to pre-school and day care. According to Tammy, the children are doing well in Salem. Micheal offered no evidence to the contrary. Tammy has no desire to return to Helena. Micheal has considered moving to Oregon to be near his children, but feels that his roots, family and career are in Helena. Moreover, he states that he is uncertain that, were he to move, Tammy would not change residences again. Tammy and Micheal both have extended family in Helena; Micheal has no relatives in the Salem area.

¶4    Micheal's expert, social worker/clinical counselor Dr. Leta Levoti, testified that generally it is in the best interests of the children of divorced or separated parents that the children have frequent and consistent contact with both parents and, to that end, that both parents should reside in the same community. She stated that occasional, longer visits are not as desirable, and that children who have a healthy, frequent and continuous relationship with both parents have the best chance for a healthy and well-adjusted development. She testified that children who do not enjoy this sort of relationship may suffer problems with regard to role-modeling, self-esteem, behavior, grieving, fantasizing (about the missing parent), attachment and abandonment. Dr. Levoti also testified, however, that when a parent has been the primary care-giver for most of a child's life, it can be devastating to the child to be removed from that parent.

¶5   In preparation for her testimony, Dr. Levoti met with Micheal and his mother for 1 hour and 30 to 45 minutes.  She never interviewed Tammy; she never evaluated either parent with the children; she did not evaluate the children's home; nor did she evaluate the children or their social and emotional development.  As indicated, Dr. Levoti  opined generally about the detrimental effects on children who do not have a good relationship and frequent contact with both parents.  She also testified as to the results of a study which indicated that about one-third of the children of separated parents grow up well adjusted, while one- third turn out "so-so," with the remaining one-third growing up maladjusted.  However, Dr. Levoti offered no testimony or opinion as to whether the children in this case, D.M.G. and T.J.G., have suffered or would likely suffer any of the detrimental effects to which she referred by reason of Micheal and Tammy living in distant cities, nor did she have an opinion that Tammy was not acting in the children's best interests when she moved to Salem.

¶6   The parties conceded, and the court found, that both Tammy and Micheal were fit parents.  The trial court also found that Tammy did not consider the children's best interests in moving to Salem, but acted in her own personal interest and that she did not search for or demonstrate that she could not find comparable employment in Helena.  The court rejected as being economically and logistically unrealistic Tammy's stated desire that Micheal have a relationship with the children and visit the children frequently for short periods.  The court also found, however,  that since their separation, the parties have been able to mutually and amicably arrange reasonable visitation, and the court expected that cooperation to continue in the future.

¶7   Based upon this evidence and this record, the District Court concluded that it was in the children's best interests that both parents reside in Helena and that it was not in the children's best interests that Tammy relocated to Salem, Oregon, or that she remain there.  The court determined that D.M.G.'s and T.J.G.'s best interests would be more appropriately served if the children were to have continuing contact with both parents and that this sort of contact could not reasonably occur if Tammy resided in Oregon and Micheal resided in Helena.   Accordingly, the court entered the order referred to above. Tammy timely appealed, and Micheal timely cross-appealed.

## ISSUES

¶8   Three issues are raised on appeal:
     1.   Does the District Court's order violate Tammy's constitutional right to travel?
     2.   Did the District Court err by failing to apply the statutory presumption at § 40-4-212(3)(a), MCA?

         3. Did the District Court err by alternating custody every two years?

¶9   This third issue is also the subject of Micheal's cross-appeal. We hold that the trial court's order violates Tammy's constitutional right to travel; that the court erred by failing to apply the statutory presumption at § 40-4-212(3)(a), MCA, in favor of Tammy; and that the court erred in alternating custody every two years.

## STANDARD OF REVIEW

¶10  We review a district court's findings of fact relating to child custody and visitation matters to determine whether the findings are clearly erroneous.  A finding is clearly

erroneous only if it is not supported by substantial evidence, the trial court has misapprehended the effect of the evidence, or a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. In re Marriage of Johnson (1994), 266 Mont. 158, 166-67, 879 P.2d 689, 694 (citations omitted). We will not overturn the district court's decision unless a clear abuse of discretion is shown. In re Marriage of Huotari (Mont. 1997), 943 P.2d 1295, 1297, 54 St.Rep. 884, 885 (citations omitted). Our review as to questions of law is plenary. In re Marriage of Syverson (Mont. 1997), 931 P.2d 691, 700, 54 St.Rep. 32, 37.

DISCUSSION

I.

Does the District Court's order violate Tammy's constitutional right to travel?

¶11 Tammy argues that, in conditioning her continued primary physical custody of D.M.G. and T.J.G. on the requirement that she relocate to Helena from her job, home and extended family in Salem, the trial court violated her constitutionally protected fundamental right of interstate travel. This right is recognized in a number of decisions of the United States Supreme Court and in a decision of this Court. On the other hand, Micheal maintains that, in the context of this custody dispute, Tammy's constitutional right of interstate travel is qualified by the special obligations of custody, the state's interest in protecting the best interests of the children and by the competing interests of the non-custodial parent. Though raised by Tammy in the proceedings below, the trial court did not address her constitutional argument in its decision. We conclude that the legal positions of both parties, summarized above, are correct.

¶12 The right of interstate travel has repeatedly been recognized as a basic constitutional freedom. Memorial Hospital v. Maricopa County (1974), 415 U.S. 250, 254, 94 S.Ct. 1076, 1080, 39 L.Ed.2d 306. This right is not mentioned in the federal constitution. Nevertheless, it is a right so fundamental and elementary that it was conceived from the beginning "to be a necessary concomitant of the stronger Union the Constitution created." United States v. Guest (1966), 383 U.S. 745, 758, 86 S.Ct. 1170, 1178, 16 L.Ed.2d 239. As the Court described this right in Shapiro v. Thompson (1969), 394 U.S. 618, 629, 89 S.Ct. 1322, 1328, 22 L.Ed.2d 600, overruled on other grounds by Edelman v. Jordan (1974), 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662, it is, among other things, the right "to migrate, resettle, find a new job, and start a new life." And because the right of interstate travel is fundamental, a classification which operates to penalize those persons who exercise this right must be justified by a compelling state interest. Memorial Hospital, 415 U.S. at 258, 94 S.Ct. at 1082 (citing Shapiro and Dunn v. Blumstein (1972), 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274). The burden on the government to justify this compelling interest is a heavy one. Memorial Hospital, 415 U.S. at 269, 94 S.Ct. at 1088.

¶13 Memorial Hospital, Dunn, and Shapiro held that various state statutory durational residency requirements violated the Equal Protection Clause of the Fourteenth Amendment by creating invidious classifications that impinged upon the right of interstate travel. Memorial Hospital, 415 U.S. at 269, 94 S.Ct. at 1088; Dunn, 405 U.S. at 338, 92 S.Ct. at 1001; Shaprio, 394 U.S. at 627, 89 S.Ct. at 1327. Guest involved a conspiracy to deprive African-Americans of their right of interstate travel based upon racial considerations. Guest, 383 U.S. at 757, 86 S.Ct. at 1177. Those are not precisely the sorts of legal restrictions which are at issue here. Nonetheless, Tammy correctly points out that we have referred to this constitutional right of interstate travel and have cited Shapiro in our own case law involving an issue of child custody. That case, In re Marriage of Cole (1986), 224 Mont. 207, 729 P.2d 1276, involved a fact situation wherein we affirmed the trial court's refusal to restrict the right of the primary custodial parent to relocate the children out of state as part of a marital dissolution and joint custody determination. We will discuss this case in more detail later in this opinion.

¶14  In two other cases cited by Micheal, the change of residence issue was addressed but not vis-a-vis the constitutional right of interstate travel.  In re Marriage of Bergner (1986), 222 Mont. 305, 310, 722 P.2d 1141, 1145, we ruled with no analysis whatsoever, that on the issue of whether a parent has the right to change residence subject to the best interests of the child, the answer is an "unqualified 'yes.'" We cited § 40-6-231, MCA, which provides:

> A parent entitled to the custody of a child has a right to change his residence, subject to the power of the proper court to restrain a removal which would prejudice the rights or welfare of the child.

In Bergner, the father, who was a joint custodian, sought modification of the custody decree.  He asked to be awarded physical custody on the basis that the children had been integrated into his home after having been placed with him for an extended period of time.  Bergner, 722 P.2d at 1142.  In addressing the change of residence issue, we noted simply that the father was awarded custody of the children, not because the wife moved to Texas, but because the girls' interest would best be served by allowing them to remain in the family, school and community they had enjoyed for several years.  Bergner, 722 P.2d at 1145.

¶15  Micheal also cites In re Marriage of Elser (1995), 271 Mont. 265, 895 P.2d 619, overruled on other grounds by Porter v. Galarneau (1996), 275 Mont. 174, 911 P.2d 1143.  In that case we affirmed the trial court's denial of the mother's motion for an order permitting her to remove the children to a permanent residence out of state and the court's granting the father's motion for an order designating him as the primary residential custodian.  Elser, 895 P.2d at 623. Again, the constitutional right of interstate travel issue was not raised or addressed. We concluded simply that substantial evidence supported the District Court's finding that the proposed relocation out of state was not in the children's best interests, Elser, 895 P.2d at 623, again citing, among other authority, § 40-6-231, MCA.  Elser, 895 P.2d at 621-22.

¶16  Finally, while not cited by either party, we also referred to this same statute in In re Marriage of Johnson (1989), 238 Mont. 153, 155, 777 P.2d 305, 307, and in In re Marriage of Paradis (1984), 213 Mont. 177, 181, 689 P.2d 1263, 1265.  Again, however, we did not address the change of residence issue in the context of the constitutional right of interstate travel argument raised by Tammy here.

¶17  Since the constitutional issue was not raised in Bergner, Elser, Johnson or Paradis, our decisions in those cases are of only marginal assistance in our resolution of this issue. Furthermore, the case at bar presents a different factual twist from those in Bergner, Cole, Elser, Johnson and Paradis. In those cases the residence change issue was raised in the context of the court allowing or refusing to allow the custodial parent's relocation from the children's home in Montana to another state.  In those cases either there was a previously existing custody decree for which modification was sought (Bergner, Elser, Johnson and Paradis) or the court's decision was made as part of a marriage dissolution action in which the parties' and children's home was in Montana at the time custody was first determined (Cole).

¶18  The case at bar, however, involves a situation where the court is effectively requiring that the children's primary residential custodian move to Montana from another state where the custodian had already established her home and the children's home prior to the initial custody determination and prior to the relocation issue being raised.  As noted later in this opinion, we conclude that the instant fact situation may impact the

constitutional right of interstate travel to an even greater extent than would the facts in our previously decided cases.

¶19   With those initial observations we turn to our decision in Cole, the one case decided by this Court which is most clearly on point to our discussion here.   Cole involved the trial court's custody decision as part of a dissolution action.   The parties had two children, one of whom (Robby) was diagnosed with Down's Syndrome which entailed learning and physical disabilities.   Considerable testimony was presented at trial concerning the custody arrangement which best suited Robby's special needs.   The child's teachers, therapist and trainer all testified in their particular areas of expertise and experience with Robby and the court received recommendations from two court-appointed investigators.   The court awarded the mother custody of the children for roughly the school year, and awarded the father custody for roughly two months in the summer. Cole, 729 P.2d at 1278.

¶20   Among other things, the father challenged the trial court's refusal to restrict the mother from relocating to Tampa, Florida, claiming that he would be effectively removed from contact with his children for all but his two months of custody.   The court considered the children's best interest, the mother's testimony that there were advanced employment opportunities in Tampa and testimony from Robby's counselors that Tampa would likely provide a more complete line of services to disabled children.   We concluded that, on this evidence, the court's refusal was not an abuse of discretion.   Cole, 729 P.2d at 1280.

¶21   We then went on to discuss the custody issue in the context of the constitutional right of interstate travel, citing Shapiro.   We noted the "delicate balancing" required of courts in reconciling, on the one hand, the statutorily required best interests of the child, which are most appropriately served by consistent and continuing contact with both natural parents and, on the other hand, the custodial parent's fundamental right to travel. We observed that

> [t]he custodial parent who bears the burdens and responsibilities of raising the child is entitled, to the greatest possible extent, to the same freedom to seek a better life for herself or himself and the children as enjoyed by the noncustodial parent . . . [but that] . . . the custodial parent's freedom is qualified by the special obligations of custody, the state's interest in protecting the best interests of the child and the competing interests of the noncustodial parent.

Cole, 729 P.2d at 1280 (citing Cooper v. Cooper (1984), 491 A.2d 606, 613).

¶22   Next, addressing the right to travel interstate and citing Shapiro for the rule that this, being a fundamental right, it can only be restricted in support of a compelling state interest, we stated:

> We believe that furtherance of the best interests of a child, by assuring the maximum opportunities for the love, guidance and support of both natural parents, may constitute a compelling state interest worthy of reasonable interference with the right to travel interstate. [Citation omitted.] We caution, however, that any interference with this fundamental right must be made cautiously, and may only be made in furtherance of the best interests of the child.   To that end, we require the parent requesting the travel restriction to provide sufficient proof that a restriction is, in fact, in the best interests of the child.

Cole, 729 P.2d at 1280-81.

¶23  Applying our rationale in Cole to the case at bar, we conclude that Micheal failed in his burden to provide legally sufficient proof that the best interests of the parties' children would  be most appropriately served by effectively requiring Tammy to relocate to Helena from Salem or, failing to do so, that she would lose her status as the primary physical custodian of D.M.G. and T.J.G. for the next two years.

¶24  For the most part, the evidence pertaining to the children's best interest was presented through the testimony of Micheal's expert Dr. Levoti.  As pointed out above, since she had not interviewed Tammy; since she had not evaluated either parent with the children; since she had not evaluated the children's home; and since she had not evaluated the children or their social and emotional development, her testimony was, necessarily, limited to a general discussion about the detrimental effects on some children who, by reason of separation or divorce, do not enjoy a good relationship and frequent, consistent contact with both parents. Dr. Levoti offered no testimony or opinion as to whether the children in this case, D.M.G. and T.J.G., have suffered or will likely suffer any of the detrimental effects to which she referred, nor did she have an opinion that Tammy was not acting in the children's best interests when she moved to Salem.

¶25  As regards the parties' testimony, neither Micheal nor Tammy disagreed with the general proposition that it would be a good thing for their children if they both lived in the same community so that the children could enjoy the sort of frequent, consistent contact with each parent that Dr. Levoti recommended as being ideal.  Nevertheless, when it came to deciding which community that might be, each party tended to equate the children's best interest with his or her own perfectly legitimate desire to maintain his or her present life, home, community and career.  Understandably, neither Tammy nor Micheal wants to relocate and lose the life each has established and each parent believes the best interests of the children will be better served if the other party is required to bear the burden of moving.

¶26  In truth, on this record and aside from the generalities and probabilities expressed by Dr. Levoti and each parties' own view of the children's best interest, there is virtually no evidence that would lead one to the firm conclusion that the best interests of these children would be most appropriately served by their living in Helena as opposed to Salem or in Salem as opposed to Helena.  Both parties are fit and concerned parents; both have budding careers; each has the ability to make or has made a home for the children; there is extended family in each community; Micheal visits the children to the extent he is able and remains involved in their lives; and Tammy has not interfered in his efforts. To assert on this evidentiary record that D.M.G. and T.J.G. have been or will be in some way harmed or that their best interests will not be served because their parents happen to live in distant cities with the result that they may not have the sort of frequent, consistent contact with their father that may be the ideal, is pure speculation, unsupported by any case-specific evaluation, testimony or evidence to that effect.

¶27 Assuming that neither Tammy nor Micheal is willing to relocate (and that appears to be the situation facing the trial court), the bottom line is that the children are going to have to live primarily either in Helena or in Salem with one parent or the other.  In this case, all things being, for the most part, equal, the question then becomes, can the court effectively require Tammy to relocate to Helena?  In this respect, the court has given Tammy a true Hobson's choice--either she gives up her home, career, life and residence in Salem and moves where she has chosen not  to live, Helena, or she forfeits, for the next two years, her status as the children's primary residential custodian, and the children move to Helena, with the devastating impact attendant to their being removed from their

mother. This, obviously, is not only a lose-lose situation for Tammy but also is an unacceptable alternative for the children as well.

¶28 Moreover, as mentioned above, § 40-6-231, MCA, allows the court to "restrain" a custodial parent's change of residence upon a showing that removal would prejudice the rights or welfare of the child. Our prior cases have been decided in that context--i.e., the custodial parent's desire to relocate the children's existing home from Montana to another state. Arguably, an even more difficult and serious problem is presented here. Instead of preserving the stability of the home and community to which the children are accustomed by restraining their relocation from their home state to another state, the court order at issue here effectively requires the custodial parent to disrupt the stability and continuity of the children's home in the state where they have lived for a substantial portion of their young lives and to instead relocate and start over again in Montana. Under these latter circumstances, and balanced against the children's best interests, Tammy's right to live and to make her home where she chooses is even more compelling than were she simply being restrained from starting a new life elsewhere.

¶29 While, as a general proposition, it may be preferable that separated or divorced parents both live in the same community and that their children have frequent and consistent contact with each parent, realistically that ideal cannot always be met. Our courts must deal with the facts that a substantial number of this country's marriages end in divorce; that a substantial percentage of our children are born out of wedlock; that ours is a mobile society; and that many custodial parents must move to seek or maintain employment, to avoid abusive relationships or to simply start a new life free from the burdens and reminders of the past.

¶30 As Tammy argues on appeal, if the best interests of the child standard, without more, always trumps the primary custodian's constitutional right to travel and to relocate in another state, then courts can effectively order that all primary custodial parents live in the same community as the child's non-custodial parent until the child reaches the age of majority. In short, if the judicial decision to restrain the custodial parent from relocating or, as here, to effectively require the custodial parent to return to Montana, is based upon legitimate, case-specific reasons and evidence pertaining to the particular child--i.e., the sort of case-specific evidence and reasons that we referred to in Cole (which we held justified relocation)--then the state's interference with the custodial parent's fundamental right of interstate travel may be justified in furtherance of the best interests of the child. Cole, 729 P.2d at 1280-81. Absent that sort of case-specific proof, however, there is no compelling state interest justifying a court ordering the custodial parent to live in a state other than in the one he or she freely chooses.

¶31 As we pointed out in Cole, the custodial parent who bears the burdens and responsibilities of raising the child is entitled, to the greatest possible extent, to the same freedom to seek a better life for herself or himself and the children as enjoyed by the noncustodial parent. In the context of this case and under our decision in Cole, Tammy has
a fundamental, though qualified, constitutional right, in the words of Shapiro, "to migrate, resettle, find a new job, and start a new life." Shapiro, 394 U.S. at 629, 89 S.Ct. at 1328. Moreover, given that Tammy enjoys this fundamental constitutional right, Micheal bears a heavy burden to demonstrate a compelling interest on the part of the state (here, the court) to interfere with this right. Memorial Hospital, 415 U.S at 269, 94 S.Ct at 1088. While the children's best interests are appropriately balanced against this fundamental constitutional right of interstate travel, Micheal was required to provide sufficient proof that the courtþs effectively forcing Tammy to relocate to Helena was, in fact, in D.M.G.'s and T.J.G.'s best interests. After carefully reviewing the record in this

case, we conclude that the general, non-case-specific proof presented at trial on the best interests issue, as discussed above, was legally insufficient to demonstrate the sort of compelling state interest required as justification for interfering with Tammy's fundamental constitutional right of interstate travel. Micheal did not sustain the heavy burden of proof which the law imposed upon him.

¶32   Accordingly, we hold that the court abused its discretion in ordering that, for the next two years, Tammy must forfeit her status as the children's primary custodian absent her relocating to Helena with the children.

                              II.
Did the District Court err by failing to apply the statutory presumption at § 40-4-212(3)(a), MCA?

¶33   Tammy argues that the trial court erred in failing to apply the statutory presumption at § 40-4-212(3)(a), MCA, in her favor under the facts of this case. Micheal counters that Tammy's argument must fail because the court designated her the residential custodian; because the presumption was rebutted; and because the statute has been repealed. Though Tammy cited this statute in her legal memorandum supporting her proposed findings of fact and conclusions of law filed in the District Court, the court did not address this argument, nor did it refer to this statute in its decision. Again, we agree with Tammy.

¶34   Section 40-4-212(3)(a), MCA, enacted by the 1995 Legislature, provides:
        The following are rebuttable presumptions and apply unless contrary
     to the best interest of the child:
        (a) Custody should be granted to the parent who has provided most
     of the primary care during the child's life.

We have cited this statute in two previous decisions.

¶35   In In re Marriage of Abrahamson (1996), 278 Mont. 336, 924 P.2d 1334, we affirmed the trial court's decision to grant the father's motion to modify the joint custody provisions of the dissolution decree which designated the mother as the primary residential custodian. The father's motion was prompted by the mother's change of residence to Utah. Abrahamson, 924 P.2d at 1335. (Neither § 40-6-231, MCA, nor the constitutional right of interstate travel was raised or mentioned in our opinion.) Our opinion discloses that the record consisted of substantial, though conflicting, case-specific evidence. On this record, we held that the court did not err in failing to adopt the custody recommendations made by the parties' expert, Abrahamson, 924 P.2d at 1337; that the court did not misapprehend the effect of certain proffered, conflicting, evidence; and that the best interests of the parties' child required modification of the custody decree by granting residential custody to the father, Abrahamson, 924 P.2d at 1338.

¶36   In response to the mother's argument that the district court erred in failing to apply § 40-4-212(3)(a), MCA, we concluded that, while not mentioning this statute in its decision, the court did, in essence, apply it. We also concluded that the court determined that the presumption had been rebutted and that, at most, the court committed harmless error in not explicitly mentioning the statute. We interpreted and applied the statute in the following fashion:
     [The mother's] reliance on the District Court's finding that both parents are
     fit to have custody is misplaced. Section 40-4-212(3)(a), MCA, does not
     require the District Court to find that one parent is unfit to have custody.
     Rather, it establishes a presumption in favor of the preexisting custodial

parent, but only a rebuttable presumption. And as we recognized previously in this opinion, there was substantial evidence upon which the District Court based its decision to modify custody. The District Court found that [the childþs] best interest required a modification of custody and the designation of [the father] as the primary residential custodian. . . .

Our decision today does not render § 40-4-212(3)(a), MCA, meaningless. District courts should be cognizant of § 40-4-212(3)(a), MCA, and should take appropriate steps to ensure that it is, in all applicable cases, adequately considered. We hold only that, based on substantial evidence in this case, the statutory presumption was adequately rebutted, and the District Court's failure to specifically mention § 40-4-212(3)(a), MCA, does not constitute reversible error.

Abrahamson, 924 P.2d at 1338-39.

¶37 In In re Marriage of Tade (Mont. 1997), 938 P.2d 673, 54 St.Rep. 426, the parties' dissolution decree provided for joint custody with the parties sharing residential custody of their child on alternate weeks for the one year following the divorce. The mother petitioned for modification to be the primary residential custodian on deciding to move from the parties' home in Glasgow to attend MSU-Billings. Based upon the evidentiary record, the trial court awarded residential custody to the father during the school year and residential custody to the mother during the summer. We affirmed. Tade, 938 P.2d at 674. Citing our admonition in Abrahamson, the mother claimed that the court erred in failing to properly apply § 40-4-212(3)(a), MCA. We rejected her argument, however, concluding that, based upon the court's findings (which were supported by substantial evidence in the record), the statutory presumption had been rebutted and that modification of the child's residential custody was made in his best interests. Tade, 938 P.2d at 675-76.

¶38 Reading Abrahamson and Tade together, we conclude that Micheal's arguments are not well taken and that, in the case at bar, the District Court erred in not considering and properly applying the statutory presumption at § 40-4-212(3)(a), MCA, in favor of Tammy.

¶39 While, here, the District Court did designate Tammy as the residential custodian, it conditioned this designation for the following two years on her relocating to Helena-- i.e., her status as the primary residential custodian is forfeitable in favor of Micheal if she chooses not to move. Moreover, while this case involved an initial legal custody and residential custody determination by the court, the record reflects that from the twin's birth until the present, Tammy provided most of the primary care to D.M.G. and T.J.G., especially following her move to Oregon. That is not to diminish the important and conscientious involvement of Micheal in parenting his boys while they lived in Helena. Nonetheless, based upon the evidentiary record here, it would be difficult not to conclude, if one is required to label the parties as either primary or secondary care-givers, that Tammy would fit the former designation. In fact, the District Court found that after the children were born Tammy stayed home and was the children's primary care-giver. Her status as primary care-giver has never changed.

¶40 Furthermore, unlike Abrahamson and Tade, there was not substantial evidence in the record here to rebut the statutory presumption. As we pointed out in our discussion of Issue 1, the record in this case is lacking any case-specific, substantial evidence that the best interests of D.M.G. and T.J.G. will not be served by continuing to live with their mother in Salem or that their best interests would be served by relocating to Helena

without Tammy. In both Abrahamson and Tade, we affirmed the trial court's decision to modify residential custody based upon the evidentiary record. The sort of case-specific, substantial evidence that supported the district court's decisions in those cases is simply not present in the case at bar.

¶41 Accordingly, we hold that the District Court erred in not applying the § 40-4-212(3)(a), MCA, rebuttable presumption in favor of Tammy, and that the court abused its discretion in not awarding her primary residential custody of D.M.G. and T.J.G.

### III.
### Did the District Court err by alternating custody every two years?

¶42 Both Tammy and Micheal argue on appeal that the trial court erred in ordering that the children's primary physical custody be alternated every two years. At the outset, we note that Micheal did not request this sort of relief in his petition nor did either party approach this case before the trial court on the premise that custody should be shared on a biennial basis. More importantly, the record is void of any evidence that would support the District Court's conclusion that this sort of custodial arrangement would be in D.M.G.'s and T.J.G.'s best interests. In fact, the evidence--at least in the general terms in which it was presented by Dr. Levoti--is to the contrary. We conclude that, on the record here, the court abused its discretion in requiring custody of the children to be alternated between Micheal and Tammy every two years.

### Summary

¶43 On the record here, we hold that in the context of her fundamental constitutional right of interstate travel and in the absence of legally sufficient proof of a compelling interest (in the form of D.M.G.'s and T.J.G.'s best interests) for interfering with this right, the court abused its discretion in effectively requiring Tammy to relocate to Montana or, in the alternative, to forfeit for the next two years her status as the children's primary residential custodian. Moreover, we hold that the District Court erred and abused its discretion in failing to award Tammy primary residential custody based on § 40-4-212(3)(a), MCA. Finally, there being no evidence in the record to support the trial court's conclusion that the best interests of the children would be served by alternating custody between Tammy and Micheal every two years, we hold that the court abused its discretion in imposing this requirement on the parties.

¶44 Reversed and remanded for entry of a further custody order consistent with this opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE
/S/ W. WILLIAM LEAPHART
/S/ KARLA M. GRAY
/S/ WILLIAM E. HUNT, SR.