JUSTICE TRIEWEILER
delivered the opinion of the Court.
¶ 1 The Plaintiffs, Montana Environmental Information Center, Inc. (MEIC) and Plan Helena, Inc., commenced this action for declaratory judgment and injunctive relief in the District Court for the First Judicial District in Lewis and Clark County. They sought a determination that the Defendants, Montana Department of Transportation (Department) and Montana Board of Transportation Commissioners, violated the Montana Environmental Policy Act, and a preliminary injunction enjoining the Defendants from proceeding any further with the project known as the “Forestvale Interchange.” The District Court denied relief following a hearing. Both parties then stipulated that denial of the preliminary injunction constituted a final disposition of the case. Plaintiffs appeal from that judgment. We reverse the judgment of the District Court.
*3 ¶2 The sole issue on appeal is whether the District Court erred when it held that the Defendants were not required to prepare a supplemental environmental impact statement.
FACTUAL BACKGROUND
¶3 This dispute relates to the Department’s plan to revise and improve the transportation network in the North Helena Valley. The primary purpose of the plan is to improve safety and convenience by reducing traffic congestion on North Montana Avenue. Reduction of congestion is to be accomplished by increasing accessability to Interstate Highway 15. The proposed project would provide an interchange, known as the Forestvale interchange, north of Custer Avenue and provide access between Interstate 15, Montana Avenue, and Forestvale Road.
¶4 In 1991, a draft environmental impact statement (EIS) concerning the proposed Forestvale Interchange was approved by the Federal Highway Administration. The draft EIS evaluated four different alternatives. Each alternative contemplated building a new interchange along Interstate 15. Subsequently, in 1992 a final EIS was prepared and approved, accompanied by a Record of Decision which selected the Forestvale interchange as the course of action the Department would pursue. Between 1992 and 1996, the Department initiated preconstruction activities on the Forestvale interchange project, including design, preliminary surveys, and right of way acquisitions.
¶5 In late 1996, information began to surface from the Department of Transportation that the Forestvale interchange project may not as effectively address the traffic problems on North Montana Avenue as was originally anticipated in 1992. In an Opinion published in the Helena Independent Record by Marvin Dye, Director of the Montana Department of Transportation, Dye stated that “[bjased on current information - what’s actually happened and is likely to happen-Forestvale very likely won’t have much impact on Helena’s traffic problems.”
¶6 In late November 1997, the Helena City Commission and the Board of County Commissioners of Lewis and Clark County passed a joint resolution based on their determination that an alternative package of improvements would more effectively address the immediate transportation and safety needs of the community than the Forestvale interchange. The joint resolution requested the Montana Transportation Commission to schedule and fund the alternative *4 package as an alternative to the construction of the Forestvale interchange. The Joint Resolution provided four alternative projects to the Forestvale interchange: widen and construct turning lanes on North Montana Avenue; realign the Frontage Road to Washington Street; construct turning lanes and install a traffic signal at the Custer Avenue and McHugh Drive intersection; or conduct a capitol interchange area traffic study and EIS.
¶7 On December 3,1997, the Montana Transportation Commission considered the joint resolution’s request that the Commission adopt an alternative to the Forestvale interchange. The Commission declined to adopt any of the alternatives proposed by the j oint resolution and affirmed its decision to proceed with the Forestvale interchange. ¶8 Following the Commission’s decision to proceed with the Forestvale project, the Department of Transportation conducted an in-house review to determine whether a supplemental EIS would be required pursuant to Rule 18.2.247 of the Montana Administrative Rules. In February 1999, as a result of its in-house reevaluation of the Forestvale interchange, the Department concluded that a supplemental EIS was not necessary “because the changes in the proposed project’s Scope-of-Work and the new information or circumstances relevant to environmental concerns and bearings discussed below do not result in any significant environmental impacts.”
¶9 As a result of the Department’s decision in February 1999 that a supplemental EIS was not necessary, the Department decided to let the contract for the Forestvale interchange in April 1999. On April 22, 1999, the Plaintiffs, MEIC and Plan Helena, filed a complaint challenging the Defendants’ approval of the proposed Forestvale Interchange on Interstate 15 in the Helena valley and the Defendants’ decision not to prepare a supplemental EIS pursuant to the Montana Environmental Protection Act (MEPA). As a result of this lawsuit, the Department delayed letting the bids to Forestvale.
¶10 On May 26,1999, the District Court held a hearing to consider the Plaintiffs’ request for a preliminary injunction, as well as the Defendants’ motion to dismiss the case. On June 21, 1999 the District Court issued its decision. It denied Plaintiffs’ request for a preliminary injunction and denied Defendants’ motion to dismiss. Both parties then agreed to adopt the District Court’s opinion on the preliminary injunction as the final order in the case, and therefore, the District Court dismissed the action on July 2,1999.
*5 ¶11 On July 6,1999, the Plaintiffs moved the District Court for an injunction pending appeal pursuant to Rule 62(c) of the Montana Rules of Civil Procedure. Because the District Court did not immediately act upon the motion, the Plaintiffs filed an Application for an Injunction Pending Appeal in this Court on July 19,1999. Following remand back to the District Court, the District Court denied the Plaintiffs’ motion. The Plaintiffs then reapplied to this Court for an injunction pending appeal, which we granted in part, allowing the Department to let the bid, but staying construction until resolution of this appeal.
STANDARD OF REVIEW
¶12 The proper standard of review of an administrative decision pursuant to the Montana Environmental Protection Act (MEPA), is whether the agency decision was arbitrary or capricious. North Fork Preservation Ass’n v. Department of State Lands (1989), 238 Mont. 451, 465, 778 P.2d 862, 871. In North Fork Preservation Ass’n, we stated that:
[I]n making the factual inquiry concerning whether an agency decision was “arbitrary or capricious,” the reviewing court “must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.” This inquiry must “be searching and careful,” but “the ultimate standard of review is a narrow one.”
North Fork Preservation Ass’n, 238 Mont. at 465, 778 P.2d at 871 (citing Marsh v. Oregon Natural Resources Council (1989), 490 U.S. 360, 378, 109 S.Ct. 1851, 104 L.Ed.2d 377).
¶13 In Marsh, the U.S. Supreme Court stated:
[I]n the context of reviewing a decision not to supplement an EIS, courts should not automatically defer to the agency’s express reliance on an interest in finality without carefully reviewing the record and satisfying themselves that the agency has made a reasoned decision based on its evaluation of the significance-or lack of significance-of the new information. A contrary approach would not simply render judicial review generally meaningless, but would be contrary to the demand that courts ensure that agency decisions are founded on a reasoned evaluation “of the relevant factors.”
Marsh, 490 U.S. at 378, 109 S.Ct. 1851.
*6 DISCUSSION
¶14 Did the District Court err when it held that the Defendants were not required to prepare a supplemental environmental impact statement?
¶15 The Plaintiffs contend that the Defendants’ failure to prepare a supplemental EIS to analyze the alternatives that were developed, as a result of changed growth and traffic patterns, violated MEPA. The Defendants reply that the Department properly determined that a supplemental EIS was not necessary as a result of the Department’s determination that there were no significant new circumstances bearing on the proposed project or its impacts, and that the project still met the purpose and needs as set forth in the final EIS prepared in 1992.
¶16 Rule 18.2.247, ARM, provides the following:
(1) The agency shall prepare supplements to either draft or final environmental impact statements whenever:
(a) the agency or the applicant makes a substantial change in a proposed action;
(b) there are significant new circumstances, discovered prior to final agency decision, including information bearing on the proposed action or its impacts that change the basis for the decision;
(Emphasis added).
¶17 Rule 18.2.247, ARM, further provides that:
(2) A supplement must include, but is not limited to, a description of the following:
(a) an explanation of the need for the supplement;
(b) the proposed action; and
(c) any impacts, alternatives or other items required by ARM 18.2.243 for a draft EIS or ARM 18.2.245for a final EIS that were either not covered in the original statement or that must be revised based on new information or circumstances concerning the proposed action.
(Emphasis added.) Additionally, Rule 18.2.236(2)(a)(i), ARM, defines “alternative” as: “an alternate approach or course of action that would appreciably accomplish the same objectives or results as the proposed action.”
¶18 The draft EIS for the Forestvale Interchange project was prepared in 1991. The “purpose of and need for action” section states that: “[a] primary purpose of the proposed project will be to improve safety and convenience by reducing traffic demand on the heavily *7 traveled and deficient Montana Avenue by increasing accessibility and traffic demand on the under-traveled Interstate 15.” The final EIS, prepared in 1992, states that:
Major intersections along the Montana Avenue corridor are experiencing capacity problems making north south travel difficult and growth in the North Helena Valley is increasing pressure on the corridor. Providing access to the interstate will alleviate pressure on Montana Avenue, shorten overall travel times, increase safety and minimize road user costs.
Clearly, the primary purpose of the Forestvale Interchange project was to lessen the traffic congestion on Montana Avenue by diverting traffic onto Interstate 15.
¶19 In 1997, the Montana Department of Transportation began to question the adequacy of the final EIS due to several changed conditions since the time the document was prepared in 1992. In a memorandum regarding a March 1997 meeting between members of the Montana Department of Transportation’s Environmental Services and the Federal Highway Administration, MDT’s Manager of Environmental Services, Joel Marshik, stated that “[t]he concern of MDT was the fact that the [Forestvale Interchange] project does not meet the purpose and need as presently stated [in the EIS]: to relieve congestion on Montana Avenue.”
¶20 In an Opinion published in the Helena Independent Record on November 4,1997, Marvin Dye, Director of the Montana Department of Transportation, questioned the effectiveness of the Forestvale Interchange project, in light of changed circumstances in the city of Helena over the past several years. Dye stated the following in his editorial:
There’ve been dramatic changes in Helena in the last few years. Traffic patterns and needs have changed dramatically since Forestvale was identified a decade or more ago. It looked like a good project then, but so much has changed now. Based on current information-what’s actually happened and is likely to happen-Forestvale very likely won’t have much impact on Helena’s traffic problems. .
When I talk about traffic problems, I’m talking mainly about the Capitol Interchange area and Fee Street near Albertson’s/McDonald’s, as well as the traffic around Montana and Custer. All the growth around Shopko, County Market and the new Albertson’s along north Montana weren’t even on the horizon when Forestvale *8 was planned. That area is a destination now for thousands of motorists.
¶21 Additionally, on November 17,1997, the Helena City Commission and the Board of County Commissioners for Lewis and Clark County passed a joint resolution in which they requested the Montana Transportation Commission to schedule and fund a package of transportation improvements as an alternative to the construction of the Forestvale Interchange. The joint resolution stated the following:
NOW, THEREFORE, BE IT RESOLVED that the Lewis and Clark County Board of Commissioners and the City of Helena Commission that they have determined the alternative package of improvements outlined in Exhibit A, would more effectively address the immediate transportation and safety needs of the community than the Forestvale Interchange.
¶22 Moreover, in a letter to the Montana Board of Transportation Commissioners in which Dye sought the endorsement of the Board for the package of proposed projects, including widening North Montana Avenue, as an alternative to constructing the Forestvale Interchange, Dye stated:
It was MDT that first raised the issue; specifically, that the proposed Interchange will very likely not do what it was intended to - that the Forestvale Interchange won’t deliver any substantial benefit. In raising the issue, we also made an offer - because of the unique and favorable circumstances, a project or projects that will make some difference can be substituted to make the very best use of limited funding.
¶23 Because the Montana Board of Transportation Commissioners voted in December 1997 to continue with the Forestvale Interchange project, rather than pursue one of the suggested alternatives, the Montana Department of Transportation initiated a reevaluation of the final EIS for the Forestvale Interchange. The purpose of the reevaluation was to ascertain whether the Department was required to prepare a supplemental EIS pursuant to Rule 18.2.247, ARM.
¶24 The documentation of the reevaluation demonstrates the Department’s review of the following changed circumstances: updated traffic projections; growth and traffic patterns at the Capitol Interchange; and effects to the Cedar Street Interchange. There is no discussion in the reevaluation of the proposed alternatives to the Forestvale Interchange, nor is there any significant discussion of the *9 changed patterns of development in Helena since the 1992 final EIS. In the reevaluation the Department concluded that “a supplemental EIS will not be necessary because the changes in the proposed project’s Scope-of-Work and the new information or circumstances relevant to environmental concerns and bearings discussed below do not result in any significant environmental impacts.”
¶25 With regard to the Capitol Interchange, the reevaluation states:
Without the Forestvale Interchange, the intersection of the southbound off ramp with U.S. 12 would reach LOS F [the lowest category of service in the Department’s ranking system of A through F. LOS F is a thoroughly congested, stop and go traffic flow, which increases air pollution, safety hazards and driver frustration,] in approximately fifteen years. With the Forestvale Interchange, the intersection would reach LOS F in five years during the morning peak and LOS F will be reached in ten years during the evening peak. This means that if Forestvale Interchange is constructed, traffic at the intersection will exceed capacity during the morning peak after five years. At the end of ten years, the intersection will exceed capacity during the evening peak if no improvements are made.
The Capital Interchange will degrade with or without Forestvale Interchange and while the impacts will be noticeable, they are not considered significant.
¶26 The District Court concluded that the Department gave a “sufficient enough hard look at the new traffic information” and because “the decision not to supplement the EIS was based on a consideration of the relevant factors (traffic studies) and there has been no showing that there has been a clear error of judgment,” the Department was not required to supplement the EIS.
¶27 In deciding whether the decision not to supplement the EIS was arbitrary or capricious, we are guided by the language in Marsh, 490 U.S. at 378, 109 S.Ct. 1851, in which the U.S. Supreme Court stated, in the context of reviewing a decision not to supplement an EIS, that courts must satisfy themselves “that the agency has made a reasoned decision based on its evaluation of the significance - or lack of significance - of the new information”. Additionally, as stated in North Fork Preservation Ass’n, 238 Mont. at 465, 778 P.2d at 871, “the reviewing court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.”
*10 ¶28 Our review of the Department’s decision not to supplement the EIS leads us to conclude that the Department did not make a reasoned decision based on all relevant factors when it concluded that a supplemental EIS was not necessary.
¶29 We conclude that the change in traffic patterns, the development around the Capitol Interchange, the patterns of development in Helena, and the proposed alternatives to Forestvale, specifically the Montana Avenue alternative, were all significant new circumstances which required a supplemental EIS pursuant to Rule 18.2.247, ARM. We further conclude, therefore, that the Department’s decision to not prepare a supplemental EIS was arbitrary and did not comply with the requirements of Rule 18.2.247, ARM. Accordingly, we reverse the judgment of the District Court.
JUSTICE HUNT, NELSON and REGNIER concur.