No. 01-896

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 232

IN THE MATTER OF THE CUSTODY AND
PARENTAL RIGHTS OF D.T., T.D., and B.D.,

      Youths in Need of Care.

APPEAL FROM:    District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

            Jeremy Gersovitz, Assistant Public Defender, Helena, Montana

      For Respondent:

            Hon. Mike McGrath, Attorney General; Jennifer Anders,
Assistant Attorney General, Helena, Montana

            Leo Gallagher, Lewis and Clark County Attorney; Carolyn A. Clemens,
Deputy County Attorney, Helena, Montana

      For Youths:

            Randi M. Hood, Chief Public Defender, Helena, Montana

Submitted on Briefs: May 30, 2002

Decided:   October 17, 2002

Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 The Appellant, Mona, appeals from the Amended Findings of Fact, Conclusions of Law, and Order entered by the First Judicial District Court, Lewis and Clark County, which terminated her parental rights with respect to her three children. We affirm.

¶2 The sole issue on appeal is whether the District Court abused its discretion when it terminated Mona's parental rights.

BACKGROUND

¶3 Mona is the natural mother of the three minor children, Brittany, Thomas and Dakota, at issue in this case. Brittany and Thomas' natural father is Sheldon, whose whereabouts are unknown, and Dakota's natural father is Colin. Colin and Sheldon are not parties to this appeal.

¶4 The Department of Public Health and Human Services ("DPHHS") began working with this family in February of 1999 as a result of Thomas' aggressive behavior at school. Later, on April 8, 1999, DPHHS received information that Colin had sexually assaulted Brittany and referred the matter to the appropriate authorities. Thereafter, on April 13, 1999, the State filed a petition in the District Court for temporary investigative authority, protective services, and temporary custody over all of the children.

¶5 On April 23, 1999, the parties stipulated that the children were youths in need of care. Further, Mona and Colin agreed that the District Court should grant temporary investigative authority and custody of the children to DPHHS for a period of six months. The children were then moved to their grandparents' home. In June

of 1999, Mona and Colin acquiesced to treatment plans designed to address chemical dependency and sexual offender issues to preserve the parent-child relationship. Mona and Colin agreed to the terms of another treatment plan in September of the same year. In October, DPHHS moved for an extension of temporary custody based on Mona's three alcohol related relapses and Mona and Colin's failure to complete the previously agreed upon treatment plans. On October 21, 1999, the District Court, upon stipulation of the parties, extended DPHHS's temporary custody of the children for an additional six months so Mona could undergo further chemical dependency treatment and Colin could undergo further sexual offender treatment.

¶6 In January and March of 2000, Mona and Colin agreed to the terms of additional treatment plans. However, on April 11, 2000, the District Court, upon DPHHS's motion, granted another six month extension of temporary custody based, in part, on Mona's inability "to parent three children at this time." Thereafter, Mona and Colin signed a fifth and sixth treatment plan in May and September of 2000 respectively. On October 17, 2000, upon DPHHS's motion, the District Court terminated DPHHS's temporary investigative authority, protective services, and temporary custody and returned the children to Mona.

¶7 On January 17, 2001, the State filed a second petition for temporary investigative authority, protective services, and temporary custody due to Mona's continued neglect of the children and abuse of alcohol. The District Court granted the second

3

petition and returned the children to their grandparents' home. Mona signed a seventh treatment plan in March of 2001 and Colin signed another plan in April of 2001. Finally, on June 29, 2001, the State filed a petition to terminate Mona and Colin's parental rights with respect to the three children. The petition alleged that the parents failed to comply with the provisions of their treatment plans and the conduct and conditions which rendered them unfit to parent were unlikely to change within a reasonable time. Colin subsequently relinquished his parental rights to Dakota.

¶8 On October 19, 2001, the District Court issued its Amended Findings of Fact, Conclusions of Law, and Order, which terminated Mona and Colin's parental rights. Mona appeals from the judgment of the District Court which terminated her parental rights.

STANDARD OF REVIEW

¶9 A district court's decision to terminate parental rights is discretionary and we review that decision to determine whether the court abused its discretion. *In re J.W.*, 2001 MT 86, ¶ 7, 305 Mont. 149, ¶ 7, 23 P.3d 916, ¶ 7. In reviewing a decision to terminate parental rights, we determine whether the district court's findings of fact supporting termination are clearly erroneous and whether the district court's conclusions of law are correct. *In re C.B.*, 2001 MT 42, ¶ 6, 304 Mont. 252, ¶ 6, 20 P.3d 117, ¶ 6. A finding of fact is clearly erroneous if it is not supported by substantial evidence; if the district court misapprehended the effect of the evidence; or if, after reviewing the record, this Court is left with a definite and firm conviction

4

that the district court made a mistake. *In re J.N.*, 1999 MT 64, ¶ 11, 293 Mont. 524, ¶ 11, 977 P.2d 317, ¶ 11.

¶10 This Court has further stated that a natural parent's right to care and custody of a child is a fundamental liberty interest which must be protected by fundamentally fair procedures. *In re J.N.*, ¶ 12. Thus, before terminating an individual's parental rights, a district court must adequately address each applicable statutory requirement. *In re J.N.*, ¶ 12. The party seeking to terminate an individual's parental rights has the burden of proving by clear and convincing evidence that the statutory criteria for termination have been met. *In re J.N.*, ¶ 12.

## DISCUSSION

¶11 Did the District Court abuse its discretion when it terminated Mona's parental rights?

¶12 Section 41-3-609(1)(f), MCA, provides that a court may terminate parental rights upon a finding that the child is an adjudicated youth in need of care and both of the following exist:

> (i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and

> (ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.

Mona does not dispute the District Court's finding that her children are youths in need of care. However, Mona does contest the District Court's determination that she has "failed to successfully complete her treatment plans." Mona contends that the evidence at trial indicated that she substantially complied with

5

the treatment plans. Further, Mona argues that the evidence showed that she is a "loving mother struggling and succeeding against incredible odds to parent her children." Therefore, Mona maintains that the District Court erred when it concluded that her treatment plans were unsuccessful.

¶13 When considering the criteria for termination, primary consideration must be given to the best interests of the child as demonstrated by the child's physical, mental, and emotional conditions and needs. *In re S.M.*, 2001 MT 11, ¶ 31, 304 Mont. 102, ¶ 31, 19 P.3d 213, ¶ 31. The law presumes that the best interests of the child compel termination of parental rights when a child has remained in foster care under the state's custody for fifteen of the most recent twenty-two months. *See* § 41-3-604(1), MCA. Finally, as for compliance with a court-approved treatment plan, partial compliance is insufficient to preclude termination of parental rights. *In re A.N.*, 2000 MT 35, ¶ 45, 298 Mont. 237, ¶ 45, 995 P.2d 427, ¶ 45.

¶14 After listening to the testimony presented at trial, the District Court entered the following findings of fact and conclusions of law:

> All of the professionals involved with Mona noted her inability to follow through on her treatment plans.
>
> . . . .
>
> Mona did not complete the Court-approved treatment plans in that she has failed to remain drug and alcohol free; she has failed to complete the recommended chemical dependency treatment; she has failed to participate regularly in her own individual therapy and she has not consistently attended family therapy with her children; she has been unwilling to work consistently with AWARE on

6

parenting skills; she has not terminated her relationship with Colin; and she has failed to work consistently with [the psychiatric nurse practitioner] to monitor her medication needs.

The treatment plans have not been successfully completed in that Mona has continued to experience serious problems with her alcohol and drug addictions which have made it impossible for her to care for her children on a consistent basis; she continues to have serious mental health issues which have not been addressed; and her children continue to be seriously emotionally disturbed.

Because of Mona's failure to successfully complete the treatment plans, the Court concludes that the children remain at risk for neglect and emotional abuse. Mona's history of not following through and the seriousness of her problems indicate that the problems which make her unable to parent her children now will persist well into the future. Change cannot be expected in the foreseeable future. Mona has already had plenty of time to successfully complete her treatment plans, and she has been unable or unwilling to do so.

Mona contends that the State did not present clear and convincing evidence to support these findings and conclusions. We disagree.

¶15     Randy Koutnik, the primary social worker involved in this case who began working with Mona and the children in May of 1999, testified that Mona sporadically showed promise of parental fitness. However, he stated that "[e]very time . . . we [made] progress with Mona we had to pull back because of relapses, because of her failing her treatment plan, various parts, particularly drinking again and using drugs." He stated that Mona consistently missed scheduled counseling and therapy sessions; failed to adequately deal with her chemical dependency issues as she experienced at least six substance abuse relapses, several of which required hospitalization; left the children to their own devices

7

when the children remained under her supervision; and neglected the children's need for medication.

¶16 Koutnik testified that he warned Mona on several occasions of the consequences of noncompliance with the treatment plans. However, Koutnik stated that Mona has not "demonstrated that she is serious about making any progress or [taken the] initiative . . . to make a significant change in her life that would allow her to be a responsible parent." Koutnik claimed that he was unaware of any other rehabilitative options at DPHHS's disposal to rectify Mona's family situation. Koutnik testified that, in his opinion, the children would experience continued abuse and neglect if returned to Mona's care.

¶17 Christa Andersen, the youth case manager of the family services, testified that Mona did very well when she did not have the children with her. When the children transitioned home, Andersen observed that Mona became overwhelmed, succumbed to physical sickness, and regressed back to general irresponsibility. Andersen testified that Mona simply appeared "unable to deal with having three very disturbed children."

¶18 Dana Hillyer, a psychiatric nurse practitioner, began working with Mona in September of 1999 to manage the symptoms of her bipolar disorder. Hillyer testified that many people who suffer from mental illness sufficiently stabilize through treatment to enable them to parent their children. To do so, however, requires a "structured and responsible sort of lifestyle" carefully tailored

around regimented treatment.  Hillyer noted the following in regard to Mona's sporadic attendance at treatment:

Q: . . . [Mona] wasn't very consistent with you?

A: Not overall. . . . [T]here are gaps between her coming in and then not showing for follow-up treatment and then coming back.  I mean in the sense that she would not show, call in, reschedule, come, and there would be, you know, a lapse maybe of a month or so in this whole period of time.

Q: And that is not what you are talking about when you say that someone with a mental illness needs to be monitored and stabilized and have a stable lifestyle, that sort of thing?

A: Exactly.

¶19 Rita Pickering, a social worker for A.W.A.R.E., Inc., which provides case management services to seriously emotionally disturbed children and in-home family support services, became actively involved with this case in October of 2000.  Pickering sought to visit Mona's residence twice a week to assist Mona with the children's transition home.  Pickering stated that she made herself available to help Mona improve her parenting skills and manage the day-to-day routine of child-rearing but Mona "wasn't able to let me.  She didn't let me."  Due to Mona's consistent cancellations, Pickering only spent about fifteen hours with Mona in six months.  Pickering testified that "Mona can talk about parenting and appropriate parenting . . . [but] she can't do [it]."

¶20 Dodie Heffner, a licensed clinical social worker and Brittany's individual therapist since April of 1999, testified that Brittany is a sexually overactive child who suffers from depression, post traumatic stress disorder, and attachment issues

9

as a result of sexual abuse and exposure to alcoholism in the family. Heffner claimed that Mona has been emotionally inconsistent with the children and only sporadically attended family therapy sessions. In her opinion, Mona did not make consistent progress in treatment over the extended period of time. Heffner stated that Brittany "needs to be in a permanent placement as soon as possible." Further, Heffner testified that:

> [Brittany] needs a sense of security and stability, consistency, she needs structure because of the sexually reactive behaviors; needs a lot of understanding about that; behavior management strategies that are positive and constructive and someone that can be emotionally available for her so she can learn that the world is trustworthy and dependable.

Heffner concluded that Mona is not in a position to provide those things to Brittany and would not be for quite some time. Heffner did not feel that DPHHS could safely return the children to Mona's care at this time.

¶21 Meegan Butler, a therapeutic aid at A.W.A.R.E. who provides one-on-one support to emotionally disturbed children, worked with Thomas for approximately two years. Butler provided testimony on the behavioral differences exhibited by Thomas under both Mona and his grandparents' care. Butler claimed that Thomas manifested escalated behavioral problems while under Mona's supervision. Yet, Thomas displayed an improved emotional condition while under his grandparents' supervision. Butler testified that, while in his grandparents' custody, Thomas' compliance with adults markedly improved, he appeared less physically tired, and he did better in school. Further, Susan Anderson, Thomas' therapist since May of

10

1999, opined that Mona gets so overwhelmed with her own personal issues that she loses focus of the children's needs. Anderson testified that without a high degree of consistency, predictability, and structure, she would expect to see Thomas in the juvenile or adult justice system in the future.

¶22 As indicated above, following a finding that a child is an adjudicated youth in need of care, a court may terminate parental rights if the parent has failed to comply with an appropriate treatment plan or the treatment plan proved unsuccessful and the conduct rendering the parent unfit is unlikely to change within a reasonable time. For purposes of this Opinion, we have provided merely a snapshot of the evidence presented at trial. In fact, the State presented additional professional witnesses who recounted similar experiences with Mona that we have not included herein. While most of the witnesses expressed fondness for Mona, the collective testimony clearly and convincingly established the statutory criteria for termination.

¶23 Further, as the State indicates, when it filed the petition to terminate Mona's parental rights, her children had been under DPHHS's custody for twenty-two of the past twenty-six months. Given the evidence presented at trial, in conjunction with the presumption in favor of termination of parental rights, we hold that the District Court did not abuse its discretion when it terminated Mona's parental rights.

¶24 Affirmed.

/S/ JIM REGNIER

11

We Concur:

/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE