No. 00-471

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 14

IN RE THE MARRIAGE OF

JOHN CZAPRANSKI,

       Petitioner and Respondent,

   v.

JULIE CZAPRANSKI,

       Respondent and Appellant.

| APPEAL FROM: | District Court of the First Judicial District, In and for the County of Lewis and Clark, Cause No. CDR-98-158 Honorable Thomas Honzel, Judge Presiding |
|---|---|

COUNSEL OF RECORD:

      For Appellant:

          John L. Hollow, Attorney at Law, Helena, Montana

      For Respondent:

          Mark P. Yeshe, Attorney at Law, Helena, Montana

          Jacqueline T. Lenmark, Attorney at Law, Helena, Montana (Guardian ad Litem)

          Submitted on Briefs:  December 28, 2001

          Decided:  February 11, 2003

Filed:

                         Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    The Respondent, John Czapranski (John), filed a petition for dissolution of his marriage to Appellant, Julie Czapranski (Julie), in the First Judicial District Court, Lewis and Clark County, on February 26, 1998.  Following nine days of trial, the District Court entered its Findings of Fact, Conclusions of Law and Decree of Dissolution.  Julie now appeals the District Court's Final Parenting Plan.  We affirm.

¶2    We address the following issues on appeal:

¶3    **1.  Should this Court adopt a heightened standard of review when reviewing a district court's custody decision in a dissolution proceeding?**

¶4    **2.   Did the District Court err or otherwise abuse its discretion when it ordered in its Final Parenting Plan that John be the primary residential parent?**

*BACKGROUND*

¶5    The parties were married on June 5, 1992, in Helena, Montana, and have been separated since February 1998.  At the time that John filed the petition for dissolution, the parties had three children, Zachary, born October 3, 1992; John, born October 10, 1994; and Jacob, born June 20, 1996.  Subsequent to initiating this appeal and filing her brief, the parties' son, Zachary, died while competing in the Governor's Cup race in Helena in June 2001.  This decision will not, therefore, address matters raised in Julie's brief concerning Zachary.

¶6    John filed his petition for dissolution on February 26, 1998.  On that same day, the District Court entered an ex parte order

placing the children in the temporary custody of John and giving him possession of the family home. The interim parenting plan obtained by John also required that Julie's contact with the children be supervised. Also, at the end of February, Julie entered into inpatient treatment at St. Patrick's Hospital in Missoula for a period of approximately three weeks. The requirement that Julie contact with the children be supervised ended in May 1998, and unsupervised visitation continued through the time of trial.

¶7 The District Court conducted a trial over nine days during the period of February 1999 through April 1999. It entered its Findings of Fact, Conclusions of Law and Final Parenting Plan in January 2000. In ordering the Final Parenting Plan, the District Court did not follow the recommended plans of Dr. Phillip H. Bornstein, Ph.D (Dr. Bornstein), or the guardian ad litem, both of whom testified at trial and both of whose plans recommended sharing time approximately 50/50, but with different lengths of time with each parent. The District Court determined that neither recommended plan was in the best interests of the children, but rather, concluded that the best interests of the children would be served by designating John as the primary parent and granting Julie less than 50 percent of time with the children.

¶8 In so ordering, the District Court concluded that the recommended plans demanded cooperation and communication between the parties of which they are incapable. The District Court stated that, "given the hostility between the parties, neither of the

3

recommended plans would provide stability for the children, particularly during the school year."

¶9    Julie now appeals the District Court's Final Parenting Plan, challenging its appropriateness in light of the recommended plan of Dr. Bornstein and the recommend plan of the guardian ad litem and challenging the sufficiency of the evidence supporting the parenting plan adopted by the District Court.

*STANDARD OF REVIEW*

¶10   Because the district court is in a superior position to weigh the evidence, we will not overturn the court in child custody matters unless we determine that there has been a clear abuse of discretion. *In re Marriage of Bukacek* (1995), 274 Mont. 98, 105, 907 P.2d 931, 935 (citing *In re Marriage of Bolt* (1993), 259 Mont. 54, 58, 854 P.2d 322, 324). When reviewing the court's discretionary decision, we review its findings of fact to determine whether they are clearly erroneous. *In re Marriage of Fishbaugh*, 2002 MT 175, ¶ 19, 310 Mont. 519, ¶ 19, 52 P.3d 395, ¶ 19 (citing ***In re Marriage of McKenna, 2000 MT 58, ¶ 14, 299 Mont. 13, ¶ 14, 996 P.2d 386, ¶ 14).***

¶11   A district court is required to determine child custody matters in accordance with the best interests of the child, taking into consideration a variety of statutory factors including, but not limited to, the parents' wishes, the interaction and interrelationship of the child with the child's parents, **continuity and stability of care, and whether the child has frequent and continuing contact with both parents. Section 40-4-212(1), MCA;** *Fishbaugh*, **¶ 20. While a court must consider**

4

**the factors enumerated in § 40-4-212(1), MCA, it need not make specific findings relating to each.** *Fishbaugh*, ¶ 20 (citing ***McKenna, ¶ 15).***

*DISCUSSION*

¶12  1.  Should this Court adopt a heightened standard of review when reviewing a district court's custody decision in a dissolution proceeding?

¶13  Julie argues that the above-stated standard of review should be reexamined and heightened, requiring that a district court's discretion be bound by the statutory factors for determining the best interests of the children as set forth in § 40-4-212, MCA (1997) [currently codified under the same title, chapter and section].  That statute provides in part:

> **40-4-212. Best interest of child. (1) The court shall determine the parenting plan in accordance with the best interest of the child. The court shall consider all relevant parenting factors, which may include but are not limited to: (a) the wishes of the child's parent or parents; (b) the wishes of the child; (c) the interaction and interrelationship of the child with the child's parent or parents and siblings and with any other person who significantly affects the child's best interest; (d) the child's adjustment to home, school, and community; (e) the mental and physical health of all individuals involved; (f) physical abuse or threat of physical abuse by one parent against the other parent or the child; (g) chemical dependency, as defined in 53-24-103, or chemical abuse on the part of either parent; (h) continuity and stability of care; (i) developmental needs of the child; (j) whether a parent has knowingly failed to pay birth-related costs that the parent is able to pay, which is considered to be not in the child's best interests; (k) whether a parent has knowingly failed to financially support a child that the parent is able to support, which is considered to be not in the child's best interests; (l) whether the child has frequent and continuing contact with both parents, which is considered to be in the child's best interests unless the court determines, after a hearing, that contact with a parent would be detrimental to the child's best interests. In making that determination, the court shall consider evidence of physical abuse or threat of physical abuse by one parent against the other parent or the child, including but not limited to whether a parent or other person residing in that parent's household has been convicted of any of the crimes enumerated in 40-4-219(8)(b).**

¶14 Julie argues that this Court should adopt a standard of review that would focus the analysis of a district court, requiring the court to make specific findings pertaining to each factor listed in the statute, findings regarding the developmental needs of the children and findings regarding how the court-adopted plan meets those needs, especially in light of any expert testimony or proposed parenting plans submitted by experts.  She states:

> For instance, where case specific, expert testimony was given regarding the needs of the children, it should be incumbent upon the trial Court to refer to the evidence of the needs of the children, to refer to any evidence that rebuts those as being the needs of the children, and to state the reasons why the Court disregarded those needs or thought its plan addressed those needs.

Citing *In re Marriage of Brown* (1978), 179 Mont. 417, 587 P.2d 361, Julie contends that this Court's standard of review should require a district court's findings to include evidence as to the children's wishes and any reasons why a court adopted a Final Parenting Plan that may be inconsistent with those wishes.

¶15 Citing a number of parent-child termination cases, Julie contends that this Court uses a higher standard of review in termination cases, requiring that a party seeking to terminate parenting rights has a burden of proving by clear and convincing evidence each of the statutory criteria. *See, e.g., In re Custody and Parental Rights of D.T.*, 2002 MT 232, ¶ 10, 311 Mont. 463, ¶ 10, 56 P.3d 859, ¶ 10 ("[t]he party seeking to terminate an

individual's parental rights has the burden of proving by clear and convincing evidence that the statutory criteria for termination have been met") (citation omitted). Julie questions that, if this is true, "why should this Court's standard of review permit a District Court in a parenting plan proceeding specifically [sic] address few or no criteria in MCA Section 40-4-212, and still be upheld."

¶16 John responds that the standard of review is higher in termination cases because of the impact upon the parent-child relationship and contends that the District Court in this case cannot be held in error for following the law as it has been consistently proclaimed by the Supreme Court.

¶17 The arguments proffered by each party in this matter reveal a basic misunderstanding of this Court's standard of review on appeal as opposed to the burden of proof incumbent upon a party in the district court by which the fact-finder must view and weigh the evidence. Contrary to the parties' assumptions and arguments, this Court has not adopted a higher standard of review in parent-child termination cases.

¶18 The requirement in a parent-child termination case that each statutory criteria be proven by clear and convincing evidence is not our standard of review on appeal, but rather, it is the burden of proof incumbent on the party seeking to terminate parenting rights in the district court. *See In re A.C.*, 2001 MT 126, ¶ 36, 305 Mont. 404, ¶ 36, 27 P.3d 960, ¶ 36 (clarifying this Court's standard of review in parental termination cases). Although many

7

states utilized this burden of proof in the district court prior to 1982, the "clear and convincing" burden was first adopted by the United States Supreme Court in *Santosky v. Kramer* **(1982), 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599**, and first adopted by this Court in *Matter of J.L.B.* (1979), 182 Mont. 100, 116-17, 594 P.2d 1127, 1136.

¶19 Our standard of review on appeal, however, is distinctly different. Because a district court's decision to terminate parental rights is discretionary, this Court reviews a district court's decision to determine whether the court abused its discretion. *In re Custody and Parental Rights of D.T.*, **2002 MT 232, ¶ 9, 311 Mont. 463, ¶ 9, 56 P.3d 859, ¶ 9 (citing** *In re J.W.*, **2001 MT 86, ¶ 7, 305 Mont. 149, ¶ 7, 23 P.3d 916, ¶ 7).** When reviewing a district court's discretionary decision, this Court further determines whether a district court's findings of fact supporting termination are clearly erroneous and we review the district court's conclusions of law to determine whether they are correct. *In re Custody and Parental Rights of D.T*, ¶ 9 (citation omitted). The argument that this Court ought to adopt a higher standard of review in custody cases to be consistent with our standard of review in parent-child termination cases is, therefore, misguided.

¶20 We conclude that Julie's reliance on *In re Marriage of Brown* is likewise misguided. This Court decided *Brown* in 1978 when Montana law still provided that it was presumptively in the best interests of the children for the mother to be granted custody of children of "tender years." *See In re Marriage of Tweeten* (1977), 172 Mont. 404, 409, 563 P.2d 1141, 1144. Although the presumption

8

existed when *Brown* was decided, this Court in *Brown*, relying upon *Tweeten*, recognized the presumption favoring the mother in custodial matters was not necessarily conclusive and that each case should be decided on its own facts without the use of "controlling or conclusive presumptions." *Tweeten*, 172 Mont. at 409, 563 P.2d at 1144.

¶21 However, because the presumption did exist in Montana law, the parties were required to proceed from that presumption and a burden of proof was imposed requiring a party to rebut the presumption by a preponderance of the evidence. *Brown*, 179 Mont. at 425, 587 P.2d at 366. If a district court resolved the custodial matter contrary to the statutory presumptions, specific findings were required showing that one party successfully rebutted the presumption. Absent these specific findings, even where review of the entire findings made it clear that the district court considered the presumption to have been overcome, a district court's decision required remand. As this Court stated in *Brown*:

> Our review of the District Court's findings . . . convinces this Court the District Court considered the presumption to have been overcome and found the [father] to be the better person for custody. If the District Court's findings were complete, we would affirm the custody portion of its judgment.

*Brown*, 179 Mont. at 425, 587 P.2d at 366. Montana's statutory scheme at the time of *Brown* thus required a district court to make

9

specific findings relevant to overcoming the statutory presumption by the proper burden of proof.

¶22    Neither Montana's current scheme nor the scheme in effect at the time of this case contain a presumption favoring the mother as a custodial parent, and there is thus no requirement that a court include specific findings demonstrating rebuttal of the presumption.    **For example, in *Markegard v. Markegard* (1980), 189 Mont. 374, 616 P.2d 323**, acknowledging that the presumption that the mother is entitled to custody of a child of tender years was no longer statutory, this Court stated that the presumption should not exist in the absence of a particular statute so declaring.

> We do not believe that there is a sound theory or rationale in support of a judicial declaration that such a presumption exists.  We further believe that this presumption is outdated in light of the enactment of the Uniform Marriage and Divorce Act in this state.  The presumption serves only to confuse the parties and to burden the courts.  For this reason, we overrule *Tweeten* with respect to the tender years presumption.

*Markegard*, **189 Mont. at 377, 616 P.2d at 325;** *accord Bier v. Sherrard* (1981), **191 Mont. 215, 220, 623 P.2d 550, 552-53** (concluding that the district court was correct in not making a finding as to a statutory preference for the mother as custodian).  This Court's decision in *Brown*, therefore, does not require that a district court include specific findings regarding the custodial wishes of the children as evidence to rebut the tender years presumption.

¶23 Additionally, at the time this Court decided *Brown*, Section 48-334(1), R.C.M. 1947, made it discretionary for a district court to conduct an interview of the children to ascertain their custodial wishes. If a court conducted an interview with the child or children to determine their wishes, the statute required that the court cause the interview to be part of the record by making a specific finding stating the wishes of the child or children. *Brown*, 179 Mont. at 425-26, 587 P.2d at 366 (citing *In re Marriage of Kramer* (1978), 177 Mont. 61, 580 P.2d 439). Specific findings were required, however, only after a district court exercised its discretion to conduct an interview with the child or children. The district courts in both *Brown* and *Kramer* conducted in-chamber interviews with the children and failed to record its findings, requiring remand to conform to the mandate of the statute. *Brown*, 179 Mont. at 420, 587 P.2d at 363; *Kramer*, 177 Mont. at 69, 580 P.2d at 443.

¶24 Likewise, § 40-4-214(1), MCA (1997), granted the District Court in this case similar discretion while including a similar mandate:

> The court may interview the child in chambers to ascertain the child's wishes as to residence and parental contact. The court may permit counsel to be present at the interview. The court shall cause a record of the interview to be made and to be part of the record in the case.

11

The District Court, in its discretion, did not conduct such an interview and was, therefore, not required by statute to cause a record of the interview to be made. This Court's decision in *Brown*, therefore, does not support Julie's argument that it must make specific findings as to the wishes of the child or children in all custody determinations, nor does it support adoption of a heightened standard of review.

¶25 We likewise find Julie's reliance on *In re Custody of J.C.O.*, 1999 MT 325, 297 Mont. 327, 993 P.2d 667, and *Montana Environmental Information Center, Inc. v. Montana Dept. of Transportation*, 2000 MT 5, 298 Mont. 1, 994 P.2d 676 (*MEIC*), to be unpersuasive. Justice Nelson's concern in his special concurrence in *Custody of J.C.O.* was that, without guidelines for a district court in applying the best interest standard to the question of which parent's surname a child should bear, the court may be influenced by a paternalistic notion prevalent in our society that, all things being equal, a child should bear the surname of its father. *Custody of J.C.O.*, ¶¶ 15-16. Julie suggests that, without narrowing a district court's analysis as suggested in Justice Nelson's special concurrence in *Custody of J.C.O.*, the current statutory criteria, nominally applied, "meets [sic] out subtle discrimination against the children's need to have an independent and meaningful relationship with both parents." Julie, however, does not set forth any suggested presumptions that she believes holds sway over a district court directing its consideration away from the needs of the children.

12

¶26   The only evidence offered by Julie to support this alleged preference by a district court for something other than the children's needs, or preference by a court for something other than allowing the children an independent and meaningful relationship with both parents, is that the District Court in this matter did not adopt the parenting plan submitted by Dr. Bornstein nor did it enter specific findings as to why it did not adopt Dr. Bornstein's plan.  We fail to understand how a district court's action of not adopting a particular expert's parenting plan is an example of a preference or presumption in favor of something other than the children's needs, and Julie does not suggest a preference or presumption against the children's needs, either legal or societal, that this Court need guard against.  As noted, this Court has explicitly rejected the tender years presumption favoring the mother.  *Markegard*, **189 Mont. at 377, 616 P.2d at 325;** *Bier v. Sherrard,* **191 Mont. at 220, 623 P.2d at 553**.

¶27   Rather, Julie's argument that the District Court should be required to enter more specific findings regarding the developmental needs of the children is more appropriately interpreted as expressing a difference with the District Court regarding how much weight the expert testimony of Dr. Bornstein, as well as his suggested parenting plan, should be given.  Julie's argument is not, however, relevant to this Court's standard of review of a district court's custody determinations.

¶28 In *MEIC*, we utilized an arbitrary and capricious standard of review in considering whether the Montana Department of Transportation (Department) correctly determined that it need not prepare a supplemental Environmental Impact Statement in 1997 for the proposed Forestvale Interchange along Interstate 15 in Helena. *MEIC*, ¶ 12. However, this Court's "arbitrary and capricious" standard of review for agency determinations is inapplicable to custody determinations.

¶29 Furthermore, Julie incorrectly contends that this Court in *MEIC* reversed the district court "based in part on the District Court not discussing the reevaluation of the proposed alternatives," thus implying that its findings insufficiently evaluated the evidence. Rather, the District Court in *MEIC* reviewed the Department's decision under the same "arbitrary and capricious" standard of review utilized by this Court. Thus, notwithstanding our disagreement with, and reversal of, the District Court's decision in *MEIC*, we conclude that Julie's reliance on *MEIC* in urging this Court to adopt a heightened standard of review is unpersuasive.

¶30 Based on the foregoing, we conclude that this Court's current standard of review remains appropriate when reviewing a district court's custody determinations and adoption of parenting plans in dissolution matters.

¶31 **Did the District Court err or otherwise abuse its discretion when it ordered in its Final Parenting Plan that John be the primary residential parent?**

14

¶32 Julie contends that the District Court's findings were not properly or sufficiently focused and that its ultimate custody decision was not supported by substantial evidence. Arguing from the framework of her suggested heightened standard of review, Julie contends that the District Court had before it substantial evidence relevant to numerous best interest factors under § 40-4-212, MCA (1997), and that the District Court should be required to enter findings on each factor where substantial evidence existed to support a finding. Specifically, Julie argues that, while there was ample evidence of the developmental needs of the children, the wishes of the children, the lack of any chemical dependency on her part as well evidence of her current good health, and that Julie had selected a home that allowed her easy access to the children at school, the District Court failed to make any specific finding on the basis of this evidence prior to awarding primary custody to John.

¶33 Since many of our prior decisions relied on by Julie are not necessarily consistent with the statutory scheme in effect during the custody dispute between Julie and John, it is appropriate to review those cases in light of the statutes in effect at the time, and subsequently, to review the sufficiency of the evidence in support of the District Court's judgment.

¶34 Julie relies on this Court's decision in *In re Marriage of Stephenson* (1988), 230 Mont. 439, 750 P.2d 1073, for the proposition that it is reversible error for a district court to fail to enter specific findings regarding the factors in § 40-4-

15

212, MCA, when determining the best interest of the children in custody decisions. *Stephenson* was decided under Montana's modification statute rather than the best interest statute and involved the termination of an already existing joint custody arrangement. The modification statute, § 40-4-219, MCA (1987), mandated that the lower court enter specific findings supporting any modification that terminated a joint custody arrangement. *Stephenson,* 230 Mont. at 445, 750 P.2d at 1077 ("where modification equates to termination of the joint custody, the lower court should proceed according to the requirements of § 40-4-219, MCA") (citing *In re the Marriage of Gahm* (1986), 222 Mont. 300, 302, 722 P.2d 1138, 1140).

¶35 The lower court terminated joint custody based upon the "endangerment" provision of the modification statute, but did not enter the specific findings mandated under subsection (1)(c) of § 40-4-219, MCA, which specifically required findings regarding "the child's *present* environment" as well as whether "the harm likely to be caused by a change in the environment was outweighed by its advantages to [the child]." *Stephenson*, 230 Mont. at 444, 750 P.2d at 1075 (emphasis added). The lower court's findings were based upon evidence provided long prior to the hearing date, evidence that did not support findings regarding the mother's present environment. *Stephenson*, 230 Mont. at 447, 750 P.2d at 1078. Although the district court's decision whether to modify an early custody determination was discretionary, and thus, reviewed for abuse of discretion, its modification, based on insufficient

16

findings and insufficient evidence, constituted an abuse of discretion. *See Stephenson*, 230 Mont at. 447, 750 P.2d at 1078.

¶36 Additionally, when *Stephenson* was decided, Montana statute contained a presumption that joint custody was in the best interest of the child or children. *See* § 40-4-222, MCA (1987) (now repealed). The party requesting termination of joint custody thus carried a heavy burden and a district court's decision to the contrary needed to be based on substantial evidence and demonstrate consideration that the presumption had been rebutted. "[T]he party requesting modification under § 40-4-219, MCA, bears a heavy burden because the statute's policy is to 'preserve stability and continuity of custody for the children.'" *Stephenson*, 230 Mont. at 447, 750 P.2d at 1078 (citation omitted).

¶37 *Stephenson* is inapplicable to the instant situation where Montana's statutory scheme no longer contains a presumption in favor of joint custody and where the best interest statute, as opposed to the custody modification statute, contains permissive factors that a district court may or may not consider on a case-by-case basis when making initial custody determinations. *See In re Marriage of Bukacek* (1995), 274 Mont. 98, 106, 907 P.2d 931, 936 (noting that although the best interests statute lists several relevant factors that the district court must consider, the court is not required to make specific findings which address each factor, but must set forth the "essential and determining" factors on which its determination is based).

¶38 Julie next relies on *In re the Custody of D.M.G.*, 1998 MT 1, 287 Mont. 120, 951 P.2d 1377, for the proposition that it is reversible error for a district court not to elicit or require case-specific testimony regarding the needs of the children. In *Custody of D.M.G.*, this Court did not adopt such a rule nor is the suggested rule supported by *In re Marriage of Abrahamson* (1996), 278 Mont. 336, 924 P.2d 1334, or *In re Marriage of Tade* (1997), 282 Mont. 449, 938 P.2d 673, the two cases relied on by this Court in deciding *Custody of D.M.G.*

¶39 In both *Abrahamson* and *Tade*, the district court modified joint custody provisions of the parties' dissolution decrees, effectively terminating joint custody and awarding residential custody to the parent who had not provided the primary care during the children's lives. Both cases involved the application of § 40-4-212(3)(a), MCA (1995) (now repealed), which stated that "[c]ustody should be granted to the parent who has provided most of the primary care during the child's life." We affirmed the district courts in both cases based on the presence of case-specific evidence in the record that rebutted the statutory presumption and supported the courts' decisions to terminate joint custody. *See Abrahamson*, 278 Mont. at 343, 924 P.2d at 1338; *Tade*, 282 Mont. at 452-53, 938 P.2d at 675.

¶40 We reversed the district court in *Custody of D.M.G.*, not because the district court failed to elicit case-specific testimony regarding the needs of the children, but because the district court terminated joint custody in the absence of case-specific testimony

18

in the record rebutting the statutory presumption for joint custody. *Custody of D.M.G.*, ¶ 40. The rule to be gleaned therefrom, was not that district courts were thensforth required to elicit testimony relevant to the needs of the children, but that a custody determination contrary to the statutory presumption in § 40-4-212(3)(a), MCA (1995), would not stand in the absence of such case-specific testimony. We therefore find Julie's reliance on *Custody of D.M.G.* unpersuasive.

¶41 Julie next returns to the parent-child termination statutes and, citing to this Court's decision in *In the Matter of M.A.E.*, 1999 MT 341, ¶ 18, 297 Mont. 434, ¶ 18, 991 P.2d 972, ¶ 18, argues that to protect and preserve a natural parent's rights and fundamental liberty interests to care and custody of a child, a parent's right must be protected by fundamentally fair procedures. Julie contends that the procedures for deciding custody decisions in dissolution matters should mirror the procedures for deciding termination cases, arguing that a district court making a custody determination should be required to "address relevant individual criteria of the statute, at least the needs and wishes of the children, the parents' present ability to meet those needs, and the reasons supported by the record that the plan adopted by the Court meets those needs."

¶42 This Court previously discussed the variety of statutory schemes pertaining to custody of children and termination of parental rights, noting that Montana has at least five such statutory schemes relevant to different types of situations. *See*

19

*Girard v. Williams*, 1998 MT 231, 291 Mont. 49, 966 P.2d 1155.  In *Girard* we noted that "although there is a degree of similarity as to general subject matter, each statutory scheme has specific purposes and procedures which must be followed to ensure that a judgment or order in a given case is valid."  *Girard*, ¶ 17; *also see Matter of Guardianship of Aschenbrenner* (1979), 182 Mont. 540, 553, 597 P.2d 1156, 1164 (noting that to protect the fundamental rights and relationship existing between parent and child, district courts must identify and adhere to the proper procedure and standards to be used in the proceedings before them).

¶43  The constitutional implications of terminating parental rights are severe, and the statutory scheme for terminating the parent-child relationship reflects the high burden of proof required by the party attempting to terminate the relationship and further require a specific finding, by clear and convincing evidence, of abuse and neglect.  Section 41-3-609, MCA.  A custody proceeding, however, is not so harsh as a termination proceeding and does not share the same constitutional implications, and neither do the custody statutes require such a steep burden of proof.  Thus, the best interest statute, § 40-4-212, MCA, requires that a district court "shall" determine the parenting plan in accordance with the best interest of the child or children by considering all relevant factors which "may include but are not limited to" the factors listed in the statute.  The factors which are relevant, however, may be different on a case-by-case basis and, thus, may be different for each custody determination.

20

¶44 We conclude that, in light of the statutory scheme for making custody determinations in dissolution proceedings, it would be inappropriate to arbitrarily require that one or two factors be more heavily considered than the other permissive, non-exclusive factors contained in the best interest statute, § 40-4-212, MCA. Each custody determination must be decided on a case-by-case basis and different factors will be relevant in making such determinations. It would thus be inappropriate, especially in light of the fact that the factors listed in § 40-4-212, MCA, are permissive and non-exclusive, to require a district court to analyze custody determinations in a similar manner as required by the statutory scheme for terminating a parent's rights.

¶45 Having determined that this Court's standard of review is appropriate and that a district court is not required to heavily weigh any best interest factor above another, we now turn to Julie's challenge that the District Court's custody determination is not supported by sufficient evidence.

¶46 The District Court determined that neither the parenting plan of Dr. Bornstein nor the parenting plan offered by the guardian ad litem, both of which offered shared custody arrangements, were in the best interests of the children. The District Court concluded that the parties would not be able to cooperate and communicate with each other regarding the best needs of the children due to their mutual hostility, and thus concluded that neither recommended plan provided stability for the children, particularly during the school year.

¶47 Julie contends that there existed no evidence that the children needed to be in one home during the school year nor any evidence that anything other than shared parenting is in the best interests of the children, and that, to the extent that the District Court relied upon this general notion of the need for stability during the school year, it erred. Additionally, as previously mentioned, Julie argues that the District Court failed to address substantial evidence before it, including expert testimony regarding the developmental needs of the children and Julie's lack of chemical dependency and change of residence to be closer to the children's school.

¶48 As previously noted in our standard of review, a district court's custody determination is a discretionary decision, and this Court will not disturb the decision when it is supported by substantial evidence. *In re Marriage of Bukacek* (1995), 274 Mont. 98, 105, 907 P.2d 931, 935 (citing *In re Marriage of Bolt* (1993), 259 Mont. 54, 58, 854 P.2d 322, 324). While a district court **must consider the best interest factors enumerated in § 40-4-212(1), MCA, it need not make specific findings relating to each.** *Fishbaugh*, ¶ 20 (citing *McKenna,* ¶ **15**); *see also Bukacek*, 274 Mont. at 106, 907 P.2d at 936 (noting that a district court is not required to make specific findings which address each factor, but it must set forth the "essential and determining" factors on which its determination is based).

¶49 In *In re Marriage of Tahija* (1992), 253 Mont. 505, 833 P.2d 1095, this Court affirmed the district court's joint custody

22

determination even though it erred in finding that the parties accepted and agreed upon a joint custody arrangement, stated no reasons for adopting one plan over another, and did not address numerous issues raised by the father at trial. *Tahija*, 253 Mont. at 507-08, 833 P.2d at 1096. Citing to *In re Marriage of B.H.J.* (1988), 233 Mont. 461, 463, 760 P.2d 753, 754, we stated that "this Court will not disturb a visitation schedule ordered by the District Court when it is supported by substantial credible evidence." *Tahija*, 253 Mont. at 507, 833 P.2d at 1096. "While the District Court erred in finding the visitation plan was adopted and accepted by both parties, its adoption of [the mother's] proposed plan was within its discretion." *Tahija*, 253 Mont. at 508, 833 P.2d at 1096.

¶50 Likewise, the District Court in the instant case was not required to address every issue raised at trial by Julie nor to address in specific detail all of the evidence submitted. Its decision will be upheld if it is supported by substantial evidence and if its findings set forth the essential and determining factors for its custody determination.

¶51 In its Conclusion of Law # 3, the District Court concludes that:

> Although the children love both parents and are attached to them, the Court concludes that a shared custody arrangement, whether it be on a two-week/two-week or six-month/six-month basis, is not in the best interests of the children. Any such plan demands that the parents cooperate with each other and be able to communicate with each other regarding the needs of the children. The parties, however, are not capable of doing this. Furthermore, given the hostility between the parties, neither of the recommended plans would provide stability for the children, particularly during the school year.

23

¶52 In its findings of fact, the District Court set forth the findings upon which its custody decision is based. The court found that Julie had a history of substance abuse prior to the marriage and that, although maintaining sobriety through much of the marriage, she began using marijuana again in the Fall of 1997 and used it fairly regularly after that. The court also found that Julie threatened to kill herself on a number of occasions and was hospitalized in the support center at St. Peter's Hospital for suicidal ideation and depression in January 1998 and later, in March 1998, underwent inpatient chemical dependency treatment at St. Patrick's Hospital in Missoula. Following her inpatient care, she began counseling in May 1998, and her counselor at that time believed that Julie had stabilized herself and was no longer at risk of committing suicide. At trial, Dr. Bornstein agreed that Julie was no longer a risk to herself.

¶53 The District Court found that there was a great deal of hostility between the parties during transfers of the children, due primarily to the fact that during the transfers, Julie had made inappropriate accusations, had used vulgar language, and has had inappropriate physical contact with both John and another person, usually while the children were present.

¶54 The District Court further found that Julie engaged in highly inappropriate conduct on a number of occasions during trial, including sarcastic comments while John was testifying and running from the courtroom and making vulgar comments while John's sister was testifying.

¶55 The District Court further states in its findings that it considered the custody recommendations of the guardian ad litem as well as the guardian's recommendation that Julie complete a course for victims of domestic violence and in anger management and provide evidence of her continued sobriety, regular attendance of AA meetings and continuing therapy.

¶56 Regarding the expert testimony of Dr. Bornstein and his recommended parenting plan, the District Court noted that the recommended plan was premised on the condition that Julie remain faithful to her recovery program, including following all the recommendations made as part of her discharge from St. Patrick's Hospital.

¶57 The above findings, although not discussing whether Julie was or was not successful in complying with the recommendations of Dr. Bornstein, and thus, not a model of completeness, nonetheless set forth the essential and determining factors that the District Court used in making a custody determination that it deemed to be in the best interests of the children. The record reflects that Dr. Bornstein did not believe that his recommended parenting plan was the only plan that would serve the best interests of the children:

> [B]elieve it or not, the plan is not all that important. I truly believe that there are a wealth of plans that can be implemented that will serve the best interests of the children . . . . So it's not as if I'm here today solely wedded to the plan that we proposed.

When the District Court inquired of Dr. Bornstein whether he believed that the children needed a "base of operation" while in school, Dr. Bornstein responded:

25

> The only point I would add is I tend to agree, children need a base of operations and provide [sic] some sense of security. But there's no evidence to indicate that they fare poorly when they have two bases of operations, when they do a classic mom's house, dad's house.

¶58 Upon review of the record, we find that the District Court's findings are supported by substantial evidence and are, therefore, not clearly erroneous. The findings themselves, although not a model of completeness, set forth the essential and determining factors upon which the District Court based its custody determination. The District Court considered the children's adjustment to home and school, the mental health and history of chemical dependency of Julie, the continuity and stability of care and the interaction and interrelationship of the parents and the effect that this interaction has had on the children.

¶59 As the District Court's findings are supported by substantial credible evidence and the findings include the essential and determining factors on which its custody determination is based, we conclude that the Court did not abuse its discretion in awarding primary custody to John.

¶60 The decision of the District Court is affirmed accordingly.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ TERRY N. TRIEWEILER
/S/ JIM REGNIER